TOOMER *v.* MURPHY.

4-5549

129 S. W. 2d 937

Opinion delivered June 19, 1939.

*Coy M. Nixon* and *J. M. Shaw,* for appellant.

*H. Jordan Monk,* for appellee.

GRIFFIN SMITH, C. J. Prayer of the complaint was that interests of the parties in eighty acres of land be fixed by partition; or, in the alternative, if the court found that the property was not susceptible of division in kind, that it be sold, etc.

It was stipulated that H. L. Toomer was shown by the records to have paid taxes on the Southeast Quarter of Section Six, Township Seven South, Range Nine West, from 1910 until 1917; that in February, 1920, all of the heirs of Miles Toomer, Sr., except Julia Moten, signed a certain partition deed; that Julia Moten is the daughter and sole heir of Will Toomer, who was a son and one of six heirs of Miles Toomer, Sr.; that H. L. Toomer and his wife mortgaged the lands to Mrs. Lois Murphy in May, 1920, in April, 1926, and again in May, 1926; that in 1933 Mrs. Murphy filed foreclosure proceedings, in consequence of which the commissioner's

deed, duly approved by the court, was executed in her favor and delivered April 9, 1934.

A witness for appellee testified that the 160-acre tract originally owned by the senior Toomer "had been divided on the tax books after 1921;" but such witness did not know whether H. L. Toomer or some one else had the change made. However, H. L. Toomer paid taxes on the "north 80" until 1930. Also, extensive repairs had been made on the dwelling house. J. M. Shaw, attorney "for the other side," asked witness if $100 would settle the controversy. If so, he believed he could make H. L. get up the money. Witness did not know whether Shaw represented only H. L., or all the heirs.

H. L. Toomer testified he was one of six children of Miles Toomer, Sr., and was living on the north eighty acres of the 160-acre tract left by his father; that he had lived there forty years, or since his father's death; that he had never claimed the land adversely to other heirs; that there was an attempt in 1920 to partition [the 160 acres]. By this act witness recognized interests of others. Such heirs, he said, would make regular contributions to help pay taxes. In making the mortgage to Mrs. Murphy he understood he was mortgaging only his part. He had asked some of the other heirs to sign with him, but they had refused. "Mr. Murphy" wrote the partition deed in 1920 "when it was attempted to divide the lands," and those who signed it did so in Mr. Murphy's office, but Julia Moten refused to sign. He denied having directed that the eighty acres in question be separated on the tax books from the south eighty for assessment purposes, and "supposed" Mr. Murphy did.

The voluntary partition deed recited that the persons enumerated therein "are all children and grandchildren and only surviving heirs at law of Miles Toomer, deceased, who hold by inheritance and in common." As to the north eighty acres, it was provided that H. L. Toomer "should henceforth hold possession in sever-

alty," etc. The south eighty acres were apportioned, and it is conceded that as to all of the heirs except Julia Moten, they are bound by the deed, which was promptly recorded.

Plaintiffs below were Miles Toomer, Mattie Toomer, Columbus Toomer, Ida Bullett, Sam Bullett, and Julia Moten. None testified. Julia Moten, now "forty-some" years old, did not explain her lack of interest in the property for thirteen years. During that period an uncle remained in possession. One of his first acts was to execute a mortgage. Thereafter two additional mortgages were given. He says it was his purpose to pledge only his own undivided interest, but effect of the mortgages was otherwise.

That Julia Moten knew of negotiations for execution of the partition deed is shown by testimony of H. L. Toomer, who said he took her to the lawyer's office.—— "She took her lawyer with her, and the lawyer told her if she signed the deed she wouldn't have any money." Asked if Julia knew the deed had been signed by others, the witness did not reply.

It is a fundamental principle of law, as reiterated in *Jones* v. *Morgan,* 196 Ark. 1153, 121 S. W. 2d 96, that "one tenant in common cannot claim adverse possession against a co-tenant by the mere act of occupancy," the possession of one being the possession of all. But, in the same case it was said:

"If appellants knew that A. T. Morgan and Mrs. Edna Morgan were claiming the property as their own, to the exclusion of inheritances appellants now seek to establish, then the relationship of co-tenancy terminated when seven years had lapsed after such claim or hostile attitude was brought home to them. We cannot say that at a specific time or place A. T. Morgan, by any particular words, or through conduct expressly hostile to appellants' interests, on a designated occasion, brought home to them in a distinctive way that he was denying the rights they now assert. The record strongly indicates that this could not have been done for the reason that appellants at no time asserted any rights.

"By a strained construction it *might* be said that during all this time the claimants remained quiescent and inarticulate; that they were willing to allow A. T. Morgan and his family to occupy the premises as co-tenants with themselves, and that there were reservations in their minds known to their brother by which they expected, some day, to assert the right of entry. But such a construction would be out of harmony with every rule of reason, and contrary to a preponderance of the testimony; and it cannot prevail."

The instant case is somewhat similar. It is extraordinary in that H. L. Toomer, the only person who knew whether claims had been made against him, was a hostile witness. It is also novel in that Julia Moten, the only person who knew whether she had maintained her rights, did not clarify the controversy with testimony. While Toomer said "the other heirs paid [taxes] just as much so as me," he did not state that Julia Moten was one of the contributing heirs, although that inference might be drawn.

The court found that H. L. Toomer had been in adverse possession for more than thirteen years; that he paid taxes on the property and had it separately assessed in his name; and furthermore, that all of the plaintiffs were barred by laches.

We cannot say that such findings were contrary to the preponderance of the evidence. While there is no direct testimony showing that at a particular time, in a particular way, the hostile claim of H. L. Toomer was brought to the attention of Julia Moten, the situation here is somewhat analogous to that in the Jones-Morgan Case. There is no evidence that Julia Moten, after refusing to sign the partition deed, ever asserted a claim of any kind, and the inference is fairly deducible that she knew what had been done, and was informed as to the manner of settlement. If she chose to abandon the rights she at that time had, that was her own business; or, conversely, if she elected to retain her interest and treat her uncle as a co-tenant in possession, it was her privilege to follow such course. What she did not have a right to

do was to treat the partition deed as a closed chapter, allow H. L. Toomer to make improvements, occupy the lands, pay taxes, and execute mortgages to innocent persons. It is true there is no direct evidence she knew of the mortgages; but, in view of all of the circumstances, and in view of evidence not set out in this opinion at length, we feel that the chancellor reached a fair conclusion within the law, and the decree will not be disturbed.

Affirmed.