PHILLIPS, *et al.* v. CARTER, *et al.*

5-183                                   263 S. W. 2d 80

Opinion delivered November 30, 1953.

Rehearing denied January 18, 1954.

*Walter R. Barnes* and *Floyd E. Barham,* for appellant.

*Kincannon & Kincannon,* for appellee.

WARD, J.   We are called on in this appeal to consider what constitutes adverse possession by some of several tenants in common.   The land involved is 40 acres de-

scribed as SE¼ NE¼ Section 17, Township 7N, Range 28W.

The land in question was the property and homestead of Reuben Carter who died about 1922 and his wife, Susan Carter, who died about 1907. They left surviving them several sons and daughters among whom was a son, C. C. Carter, who is now deceased, and his heirs and widow, the appellees herein, brought this suit to quiet title. One of the daughters of Reuben and Susan was Mollie Carter Phillips who is now deceased and her heirs, the appellants, claim their interest in the land by virtue of being the descendants of the said Reuben and Susan Carter.

The complaint filed by appellees sought to quiet title on two separate grounds, to-wit: (1) That there was an agreement between C. C. Carter and the other heirs that if he (C. C. Carter) would remain on the land and take care of Reuben and Susan Carter they would convey to him their interest in the land; and, (2) That they had been in the peaceable, adverse, and notorious possession of said land and had paid the taxes thereon for more than 7 years. The trial court, without making any detailed finding of facts and law, decided in favor of appellees on the ground last mentioned above, and made no reference to the other ground.

*Facts.* When Reuben and Susan Carter died they were living on the land in question and living with them was their youngest son, C. C. Carter. After the death of his father and mother, C. C. Carter and his wife, Mary, [who is still living and is one of the appellees] continued to live on the land, paying all taxes, and making certain improvements. Three of C. C. Carter's brothers, John, Reuben and Frank, together with David Griffith, one of the sons of his sister Hanna, executed and delivered to him their quitclaim deeds to said land soon after the death of Susan Carter.

(1) *Regarding the Agreement to Convey to C. C. Carter.* Without going into the testimony, it suffices to say that we find no evidence, as apparently was the finding of the chancellor, to establish that such an agreement

was ever made. Appellees were unable to point to any testimony that would justify the holding that such an agreement was ever made or carried out.

(2) *Adverse Possession.* The general rule, many times announced by the decisions of this court regarding adverse possession by a co-tenant, is that the occupant must do something, over and above occupancy, amounting to notice to the other co-tenants that he is holding adversely to their interest before the statute of limitation will begin to run. In *Jones* v. *Morgan,* 196 Ark. 1153, 121 S. W. 2d 96, it was stated:

"The fundamental principle of law which Appellants insist is controlling is conceded by Appellees; one tenant in common cannot claim adverse possession against a co-tenant by the mere act of occupancy."

In *Morris* v. *Ferrell,* 102 Ark. 679, 143 S. W. 583, in considering this same question the Court said:

"The possession of one joint tenant, tenant in common or coparcener, is the possession of another, and, until the tenant in possession does acts amounting to an ouster or disseisin of his co-tenant, the statute of limitations does not begin to run in his favor. When one tenant enters as sole owner, and his possession is openly and notoriously adverse to his co-tenant, it amounts to a disseisin. An ouster or disseisin is never to be presumed from the mere fact of sole possession, but it may be proved by such possession accompanied with a notorious claim of exclusive right. To make the possession of one tenant in common adverse against the other, it is unnecessary that notice should be given of adverse intent, but the intent must be manifested by outward acts of unequivocal kind."

Again in the case of *Hildreth* v. *Hildreth,* 210 Ark. 342, 196 S. W. 2d 353, this rule was announced:

"The general rule is that the possession of a tenant in common is the possession of his co-tenants, and that in order for the possession of a tenant in common to be

adverse to his co-tenants, knowledge of such claim must be brought home to them directly or by such notorious acts of unequivocal character that notice may be presumed."

The reason for the rule relative to co-tenants is well expressed in the case of *Singer* v. *Naron,* 99 Ark. 446, reported as *Singer* v. *Nolan* in 138 S. W. 958:

"The reason that the possession of one tenant in common is *prima facie,* the possession of all, and that the sole enjoyment of the rents and profits by him does not necessarily amount to a disseisin, is because his acts are susceptible of explanation consistently with the true title. In order, therefore, for the possession of one tenant in common to be adverse to that of his co-tenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of unequivocal character that notice may be presumed."

A careful reading of the testimony in this case convinces us that neither appellees nor their father before his death in 1948 did anything connected with or in addition to many years of occupancy which would be calculated to put appellants on notice that they were holding the land adversely to appellants' interest. The acts of possession, payment of taxes, and repairs on the dwelling are all consistent with co-tenancy as explained in the *Singer* case, *supra.* Appellees were unable to point out any specific acts on their part which, under the decisions heretofore cited, amounted to notice that they were denying appellants' title to the land.

It is submitted by appellees that the decisions in *Avera* v. *Banks,* 168 Ark. 718, 271 S. W. 970, *Jones* v. *Morgan,* 196 Ark. 1153, 121 S. W. 2d 96, and *Toomer* v. *Murphy,* 198 Ark. 610, 129 S. W. 2d 937, are authority for an affirmance here. However, a careful analysis of these cases shows that in each instance there was some fact or circumstance, over and above what appears here, to indicate an adverse holding by the co-tenant—a point at which the statute of limitations would begin to run.

It is urged also that appellants should be barred by laches because they remained silent for so many years during which time appellees [and their father] were occupying and improving the land. We have never held that laches applies in these circumstances or that it takes the place of some act amounting to notice of intent as heretofore defined.

Not only is there a lack of testimony on the part of appellees as indicated above but there is testimony tending to show that appellees' father, C. C. Carter, was occupying the land by permission of the other co-tenants. One of the heirs of Reuben and Susan Carter testified that he talked with C. C. Carter and told him that the heirs were not going to bother with the land at all until after his death provided he would keep up the taxes and take care of the place.

"Q. In other words both Mr. and Mrs. C. C. Carter could live there as long as they paid the taxes and the upkeep? A. Yes, sir."

There is also evidence to the effect that appellees were attempting to buy the interest of some of the appellants after the death of C. C. Carter. From the testimony of one of the appellees we quote:

"Q. Then you stated that you attempted to buy Mollie Phillips descendants' interest in this farm? A. We did.

"Q. And they still have an interest in the farm, do they not? A. I don't think they do.

"Q. Then why did you want to buy it? A. Well, at that time—

"Q. That was this year, wasn't it? A. No, sir, not this year.

"Q. When was it? A. In 1950. That's when I think it was."

This testimony is, of course, not conclusive that appellees were acknowledging appellants' interest in the land but it is a circumstance to be considered.

There was introduced in evidence a letter [apparently admitted by the Court] dated August 8, 1950, purporting to be from one of the appellees [or his wife] acknowledging that appellants still had an interest in the place or rather an admission that appellees meant to give appellants a portion of the money in event the place was sold.

Pursuant to the above expressed views the decree of the trial court is reversed.