McGuire *v.* Wallis.

5-2015 330 S. W. 2d 714

Opinion delivered January 11, 1960.

*C. M. Carden,* for appellant.

*Maner & Stanley, Joe McCoy,* for appellee.

GEORGE ROSE SMITH, J. The land in controversy, a farm of about 186 acres lying in Hot Spring and Saline counties, was owned by Louis Wallis at his death in 1937. Louis Wallis died intestate, survived by his widow, Martha Wallis, who died in 1955, and by eight grown children. In 1958 four of the children and the heirs of a fifth child brought this suit for partition of the property. The principal defendant, the appellee Clovis Wallis, who is a grandson of Louis Wallis, claims title by adverse possession. Clovis contends that his father, Allie Wallis, held the land adversely from 1937 until his death in 1945, and that since then Clovis himself has been in adverse possession. The chancellor sustained the plea of adverse possession, and this appeal is from a decree quieting title in Clovis Wallis.

Our study of the record convinces us that the decree is against the weight of the evidence, that Clovis failed to establish his claim of title by adverse possession. It must be remembered at the outset that the possession of one tenant in common is presumed to be the possession of all and, further, that in view of the family relation stronger evidence of adverse possession is required in this case than in one where no such relation exists. *Staggs* v. *Story,* 220 Ark. 823, 250 S. W. 2d 125; *Baxter* v. *Young,* 229 Ark. 1035, 320 S. W. 2d 640. Thus Clovis had a heavy burden of proof.

The testimony falls decidedly short of establishing hostile possession on the part of Allie Wallis. Soon after the death of Louis Wallis in 1937 Allie attempted to persuade his brothers and sisters to convey their interest to him in return for his promise to support their

mother, Martha, for the rest of her life. Two of the brothers, Ezra and Clarence, accepted Allie's proposal, and these two assert no claim to the property. But the clear weight of the evidence, if not the undisputed testimony, shows that the other children rejected Allie's offer and refused to execute the deeds he tendered. In 1938 the widow, Martha, who was entitled to dower and homestead rights in the land, conveyed her interest to Allie; but this deed was not recorded until 1944, and we are convinced that none of the appellants knew about the conveyance until shortly before this suit was filed. (It is indicated that Martha may have transferred her interest in order to qualify for monthly payments from the state welfare department.)

In 1937, after the death of Louis Wallis, Allie moved into the house that was on the land and occupied it, or another that he built, until his death in 1945. His possession, however, was not exclusive, for soon after Louis's death some of the children and neighbors had what they call a "working" and erected a house on the land for Louis's widow. Martha occupied that house until about 1947, after which she lived with one or another of her children or grandchildren until her death in 1955.

It is clear enough that Allie could not have successfully asserted a claim of adverse possession. True, he was in charge of the farm, managing it for his own benefit, paying taxes, and paying the installments upon the mortgage debt; but these facts are insufficient to support a claim of adverse possession against his co-tenants. *Smith* v. *Kappler*, 220 Ark. 10, 245 S. W. 2d 809. Moreover, the joint occupancy by Martha Wallis would in itself have been fatal to Allie's claim of exclusive hostile possession. Martha, by virtue of her homestead right and her unassigned dower, was entitled to be in possession; so the other children, knowing nothing of their mother's unrecorded deed to Allie, had no reason to suppose that Allie's dominion was other than permissive.

There remains to be considered Clovis's occupancy from 1945 until suit was brought in 1958. Clovis was ten years old when his grandfather died in 1937. In 1944 Allie undertook to convey some 51 or more acres of the land to Clovis, but it is not shown that the other cotenants knew of this deed or that it was followed by any significant visible change in the possession of the property. Until Clovis's grandmother left the land in about 1947 there is no basis for making any distinction between Clovis's occupancy and that of his father, for both apparently shared the widow's rightful possession.

After Martha's departure Clovis seems to have been in exclusive possession, but in order for that possession to be adverse it was incumbent upon Clovis to bring home to his cotenants knowledge of his hostile claim, either directly or by acts so notorious and unequivocal that notice must be presumed. *Smith* v. *Kappler, supra*. Upon this point Clovis's proof is fatally deficient. It is fair to say that his own testimony, when carefully read in its entirety, discloses that he never asserted a claim of exclusive ownership to a single one of his interested uncles, aunts, or cousins. His testimony implies that these relatives should have deduced from his occupancy that his position was hostile, but the law is otherwise.

Nor do we find in the record proof of any acts so notoriously and unequivocally hostile as to charge the appellants with knowledge of Clovis's adverse claim. Counsel list an imposing array of facts that are said to satisfy the appellee's burden of proof, but for the most part the various acts relied upon are merely subordinate aspects of conduct which, taken altogether, amounts simply to possession of the property. The most important acts going beyond normal occupancy were the construction of two barns, the drilling of a well, and the putting in of a stock pond. We are not persuaded that these additions to the property would satisfy the requirement of notorious, unequivocal action; but in any event, just as in the *Kappler* case, it is not shown that these improvements were made more than

seven years before suit was filed. Hence, as we held in the earlier case, these improvements do not satisfy the claimant's burden of proving adverse possession, though they may properly be taken into consideration in the division of the property.

Reversed.