FLUNDER v. CHILDS

5-3273                                      382 S. W. 2d 881

Opinion Delivered October 19, 1964.

*Wilbur Botts,* for appellant.

*Chris Carpenter,* for appellee.

JIM JOHNSON, Associate Justice. This litigation involves title to real property and was commenced as an action in ejectment.

On January 11, 1945, a deed from Mrs. M. E. Lumsden to Mary Jackson and W. J. Jackson, her father, was filed for record in Arkansas County. We will refer to the deeded property as Lot 12. The deed was dated January 9, 1945, and recited a consideration of $850.00. At that time and thereafter until her death, Mary Jackson was the wife of Robert Sam Hobson. The Hobsons owned and operated a cafe on nearby property (known as Lot 10) and W. J. Jackson, Mary's father, lived in the back of the cafe. Sometime after the deed the Hobsons built or remodeled a house on Lot 12 and lived there until their respective deaths.

On February 23, 1952, Mary Jackson Hobson died intestate without descendants leaving her father as her only heir at law and Hobson as her surviving spouse. Hobson continued to live in the home on Lot 12 and Jackson continued to live in the rear of Hobson's cafe on Lot 10.

On September 22, 1962, Robert Sam Hobson died testate leaving a step-daughter by an earlier marriage, Ozella (Hobson) Childs, as executrix and sole legatee.

On October 15, 1962, W. J. Jackson filed a complaint in ejectment in Arkansas Circuit Court, Southern Dis-

trict, against appellee Ozella Childs individually and as executrix of Hobson's estate to obtain possession of Lot 12, after giving her and her tenant notice to quit. Appellee answered, making general and specific denials and counter-claimed, alleging first that the deed from Mrs. M. E. Lumsden was originally made to Robert Sam Hobson and Mary Hobson and after preparation and execution the names of the grantees were "illegally and fraudulently" erased and the Jackson names substituted, and the deed should be so reformed and corrected; second, that the Hobsons went into possession of the property about January 9, 1945, improved the lot by building a house on it, claimed title, paid all taxes, and have been in actual, open, notorious and peaceful possession up to the time of Hobson's death; third, that Hobson had been in actual adverse possession since Mary's death in 1952, claiming title against Jackson and the whole world for more than seven years. The case was thereafter transferred to Arkansas Chancery Court.

On April 5, 1963, W. J. Jackson died testate leaving a nephew, appellant Hilton Flunder, as his sole legatee and executor of his estate. After petition, an order of revivor of the suit was entered September 7, 1963.

After trial on September 24, 1963, the chancellor found (1) that appellee failed to show by "clear and concise" evidence the alteration of the deed and denied appellee's prayer for reformation of the deed, (2) that Hobson had actual, peaceable, continuous, open and adverse possession of the property from 1952 until his death in 1962, more than seven years, that Jackson had knowledge of the adverse possession and made no claim to the property until after Hobson's death; and (3) that appellee individually and as executrix is the owner of the property by adverse possession and is entitled to a decree of court for said lands. From such decree comes this appeal.

Appellant relies on three points, the first one being that the decree of the lower court should be affirmed in denying reformation of the deed from Mrs. Lumsden to Mary Jackson and W. J. Jackson, her father.

In *Berk* v. *Beckett,* 200 Ark. 1189, 137 S. W. 2d 898, this court said:

"We have many times announced the rule to be that while parol evidence is admissible in a suit to reform an instrument, which has been duly acknowledged, on the ground of mistake, fraud, or mutual mistake, however, such evidence must be *clear, convincing* and *decisive.*" [Emphasis ours.]

In the case at bar, the original deed was admitted into evidence as well a pencil-written receipt, both of which appear to have been signed by the same person. The deed, on its face and back, shows that the names originally typed in as grantees were erased and the names "Mary Jackson and W. J. Jackson, her father" typed in over the erasures. The receipt, dated January 9, 1945 as was the deed, recites "Received of Mary Hobson and Robert [sic] Hobson Eight Hundred & Fifty on Lot 12, Block 2," and signed "Mrs. M. E. Lumsden." There was testimony that Sam and Mary Hobson built or remodeled a house on this property, that Sam paid the taxes and collected the rents. There was ample testimony that during Mary's lifetime, W. J. Jackson lived at Hobson's cafe and continued to live there after Mary's death while Sam occupied the house on Lot 12. It is also undisputed that the deed was recorded on January 11, 1945, two days after it was executed and seventeen years before Sam's death.

In *Gist, adm'r* v. *Gans,* 30 Ark. 285, we held that:

"Mr. Greenleaf says: 'Generally speaking, if nothing appears to the contrary, the alteration will be presumed to be contemporaneous with the execution of the instrument. But if any ground of suspicion is apparent upon the face of the instrument, the law presumes nothing, but leaves the question of the time when it was done, as well as that of the person by whom, and the intent with which the alteration was made, as matters of fact, to be ultimately found by the jury, upon proofs to be adduced by the party offering the instrument in evidence.' 1 Greenleaf, Ev., sec. 564.

"In this State we all know that many instruments are written by unskilled persons, and that erasures, interlineations, etc., frequently appear on the face of notes, bonds, bills, deeds and other contracts. We are, therefore, not disposed to sanction a more rigid rule than that expressed in the paragraph above. . . ."

In the case at bar the erasures are apparent, but there is no evidence as to who made them, when, or why. All interested parties in the original transaction, the grantor Mrs. Lumsden, the Hobsons and W. J. Jackson, were deceased prior to the trial. The presence of erasures raises no presumption of fraud, *Phipps-Reynolds Co.* v. *McIlroy Bank & Trust Co.*, 197 Ark. 621, 124 S. W. 2d 222; *Williams* v. *Welch*, 223 Ark. 214, 266 S. W. 2d 61.; and on the record before us the chancellor was clearly correct.on this point in finding that there was no clear, convincing and decisive evidence warranting reformation of the deed here in question on the ground of mistake, fraud or mutual mistake. *Berk* v. *Beckett, supra.*

The other two points that appellant relies on are: (1) that the trial court committed error in holding title in appellee by adverse possession, in failing to consider the fact that Mary Jackson Hobson and Robert Sam Hobson were husband and wife, and that Robert Sam Hobson continued to live on the property as his curtesy right in his wife's property after her death, and (2) the court erred in holding that appellee had gained title to the lands in controversy by adverse possession since Robert Sam Hobson, through whom appellee claims title, went upon the lands by permission and had never been any change brought to the knowledge of the owner that he was claiming the land by adverse possession.

Having found that there was no evidence to warrant reformation of the deed, and title was therefore in Mary Jackson Hobson and W. J. Jackson as tenants in common, Robert Sam Hobson's entry on the land was permissive, that is, as Mary Hobson's husband. After her death Hobson was entitled to one half of her one half interest in this real property in fee as curtesy. Ark. Stat.

Ann. § 61-228 (1947). Thus Hobson, receiving a one-fourth interest, became a tenant in common of this property with W. J. Jackson. This court has had several occasions recently to consider adverse possession by cotenants. In *McGuire* v. *Wallis*, 231 Ark. 506, 330 S. W. 2d 714, where one heir claimed property by adverse possession against other heirs, this court said:

"It must be remembered at the outset that the possession of one tenant in common is presumed to be the possession of all and, further, that in view of the family relation stronger evidence of adverse possession is required in this case than in one where no such relation exists. *Staggs* v. *Story*, 220 Ark. 823, 250 S. W. 2d 125; *Baxter* v. *Young*, 229 Ark. 1035, 320 S. W. 2d 640. Thus Clovis had a heavy burden of proof."

Sam Hobson's entry on the land was permissive as we have said, his wife being a cotenant of this property with her father. There is no allegation, and certainly no proof, that Sam claimed adversely to his wife or that his wife claimed adversely to her cotenant, W. J. Jackson. It is true that Mary and Sam lived on the property, paid the taxes, improved the property and collected the rents. After Mary's death, Sam lived on the property as a cotenant in his own right (by curtesy) and continued to pay taxes and collect rents. In *Smith* v. *Kappler*, 220 Ark. 10, 245 S. W. 2d 809, a similar case which reviews a number of citations, it was said:

"While it is possible for a tenant in common to acquire title by adverse possession, we said in *Hardin* v. *Tucker*, 176 Ark. 225, 3 S. W. 2d 11: 'In order for the possession of a tenant in common to be adverse to that of his cotenants, knowledge of his adverse claim must be brought home to them directly or by such notorious acts of unequivocal character that notice may be presumed.'"
Here, the testimony is substantial and uncontroverted that there was no change in Hobson's possession or in his relationship with Jackson after Mary's death. Jackson continued to live at Hobson's cafe and Hobson continued to live and pay taxes on Lot 12, which was con-

sonant with Hobson's collection of the moderate rents from two shacks on the rear of Lot 12. *Smith* v. *Kappler, supra.* Having reviewed all of the testimony on trial de novo, it is our view that appellee has failed to meet the heavy burden of proof reiterated in *McGuire* v. *Wallis, supra.*

The question of proper parties was not raised. See, however, Ark. Stat. Ann. § 61-110 (1947).

**Reversed.**