Isola L. LOUNSBERRY *v.* CHEROKEE VILLAGE DEVELOPMENT CO., INC. AND MARGARET CROSS

5-4969                                    444 S. W. 2d 876

Opinion delivered September 29, 1969

*Sullivan & Causbie,* for appellant.

*Murphy, Arnold & Blair,* for appellee, Margaret Cross.

CARLETON HARRIS, Chief Justice. On September 9, 1956, Isola L. Lounsberry, appellant herein, and her husband, Carl W. Lounsberry, entered into a contract with Cherokee Village Development Company, Inc., for the purchase on time of two contiguous lots in the village; subsequently, a home was constructed on the lots. On February 8, 1958, the payments to Cherokee were completed, and pursuant to the instructions of Mr. Lounsberry to an employee of the company, George Billingsly, the deeds[1] were prepared and, in the absence of Mrs. Lounsberry, delivered to Mr. Lounsberry, naming "Carl W. Lounsberry, a married man," as sole grantee.

On September 24, 1966, Lounsberry died, leaving

---

[1] Two deeds were executed, one to each lot.

surviving him his wife, appellant herein, and Margaret Cross, a daughter of the deceased by a previous marriage, who lived in Chicago[2]. In November, 1967, Mrs. Lounsberry instituted suit against Cherokee Village Development Company and Margaret Cross alleging that due to mutual mistake or clerical error, the deeds had been made to Mr. Lounsberry, rather than to both the husband and wife, further alleging that appellant had contributed a large part of the purchase price of the property, and asking that the deed be reformed. On January 10, 1968, Mrs. Lounsberry amended her complaint, adding the allegation that Lounsberry had obtained the execution of the deed to the lots to himself, and had defrauded appellant. Cherokee Village answered, admitting residence of the parties, and the execution of the contract but stating that it did not have sufficient knowledge or information relative to the other matters alleged to either affirm or deny; and that it had no interest in the property, and, accordingly, no interest in the question at issue. Margaret Cross answered, denying the allegations of mutual mistake or fraud, and further asserting that the purchase price was paid by her father from his own separate funds. It was also alleged that appellant knew, or should have known, of the manner in which the deed was drawn, and the prayer was that the complaint be dismissed. On hearing, the court held that appellant had not established her contentions, and the complaint was dismissed. From the decree so entered, appellant brings this appeal.

It is our view that the case must be affirmed. We have held on numerous occasions that the evidence necessary to reform a deed on grounds of mistake, fraud or mutual mistake, must be clear, cogent, and convincing.[3] *Broderick* v. *McRae Box Company*, 138 Ark. 215, 210 S. W. 935; *Flunder* v. *Childs*, 238 Ark. 523, 382 S. W. 2d 881. Appellant first argues however that, since

[2]Appellant also has a daughter by a prior marriage.

[3]Sometimes characterized as "clear, convincing, unequivocal, and decisive."

Cherokee Village admitted the allegations of the complaint, there was no longer a requirement that the evidence for reformation be clear, cogent, and convincing. We disagree for two reasons. For one, Cherokee only admitted the residence of the parties, and the fact that the contract had been entered into for the purchase of the lots. The company neither denied nor affirmed the allegations of mutual mistake or fraud, stating that it did not have sufficient knowledge. Mainly, however, we do not agree that appellee, Margaret Cross, would be bound by the admissions of Cherokee Village. Certainly, had this suit been instituted during the lifetime of Mr. Lounsberry, he would have had the right to defend against the charge of mutual mistake, or fraud, and Mrs. Cross presently stands in his shoes, and has that same right.

Appellant principally relies upon the following facts to establish her right to the relief sought:

1. She, along with her husband, signed the contract of purchase of September 9, 1956, along with a note for the balance due, and a receipt for the down payment carried the names of both Mr. Lounsberry and appellant. An agreement with Cherokee changing the property line was also executed by both parties on the same date.

2. A house was constructed on the property by Seminole Construction Company in July, 1957, and Lounsberry and appellant jointly executed a note to Seminole for $1,761.11.

3. Several insurance policies were offered in evidence, reflecting that the property was insured in the names of both husband and wife.

This evidence is certainly pertinent to the issue at hand, and appellant asserts that these facts are very similar to those in *McCollum* v. *Price*, 213 Ark. 609, 211

S. W. 2d 895, and that the case should be controlling in the present litigation. There, W. R. Price and Pearl Price, husband and wife, had entered into a written contract to purchase a home, and a joint note and deed of trust were given to J. M. Bates, the other party to the contract. By deed, the property was subsequently conveyed to Mrs. Price, and Mr. Price learned of this deed to his wife shortly thereafter, but took no action to correct it. After the death of Mrs. Price, her sons, by a former marriage, contended that their mother had been the owner of the home place at the time of her death, and Mr. Price had no interest in the property. This court disagreed, holding that:

"The evidence here supports the finding of the chancellor that the deed to Pearl G. Price by the vendor under the contract of purchase was procured by Mrs. Price in the absence of appellee and without his knowledge and consent." * * *

* * *

"We think the rule announced in *Roach* v. *Richardson, supra,* is applicable here and that the written contract of sale, *when considered with all the surrounding circumstances,*[*] created an equitable estate by the entirety in appellee and his wife."

Mrs. Price had made a will in which she stated that she owned the property, and this court commented that this will was kept as a "carefully guarded secret" from Mr. Price. Another relevant circumstance in that case, which the court specifically mentioned, was that a real estate agent, who had been interested in buying the property, testified that he approached Mrs. Price about the matter, and she told him that the place belonged to her husband, and the agent would have to see him.

In the case before us, there is no testimony from "disinterested persons" that has any direct bearing on

[*]Emphasis supplied.

whether any fraud was committed. In fact, there is no evidence of fraud at all, and any finding to that effect would have to be based entirely on the surmise that fraud was committed simply because Mr. Lounsberry directed that the property be deeded to him. A deed cannot be reformed on speculative evidence. There was no clerical error or mutual mistake for Billingsly, Cherokee employee, who prepared the deed, testified that he did this at the direction of Mr. Lounsberry.

Without going into detail, it definitely appears that the large part of the money used in the purchase of the lots and the building of the house was furnished by Mr. Lounsberry, the total involved being approximately $7,500.00. Mrs. Lounsberry testified that she and her husband held a joint bank account, and she said that Mr. Lounsberry also had a separate account in a different bank. Appellant agreed that over $4,000.00 of the money spent for the lots and house came from the sale of old coins, Mr. Lounsberry being a coin collector, and she admitted that he owned a substantial amount of these coins before his marriage to her.[5] Eleven hundred dollars ($1,100.00) was paid from the account held solely by Mr. Lounsberry. Mrs. Lounsberry further testified that she and her husband, at one time, had three safe deposit boxes at the Hardy Bank for the purpose of keeping coins, and that the deeds in question were in one of those lock boxes, designated as Box 6. She said that she had visited these lock boxes about 75 times, had been in Lock Box 6 on many occasions, and had seen the deeds in question, but had not examined them. The witness added that she and her husband had also purchased lots at Bismark, Missouri, and her name was on these deeds; it seems a little significant that she knew her name was on both of the Missouri deeds, but did not know that her name was not on the Cherokee deeds until after Mr. Lounsberry's death. The Chancel-

[5]Mrs. Lounsberry testified that she had not been in the "coin business" before she met Mr. Lounsberry.

lor made particular comment with reference to this testimony, saying:

"I find it very difficult to reconcile the plaintiff's contention that she knew nothing about it whereas the deed was recorded about eight years ago and lay in a lock box to which she had constant access and to which she did enter very frequently, according to the record, and I just find it very difficult to believe that."

Since appellant also admitted that she had paid the taxes on at least two occasions, and the record clearly establishes that the property was assessed solely in the name of Carl W. Lounsberry, it does seem that she would have noticed that the tax receipts reflected his sole ownership of the property.

This is not a case of a housewife who knew nothing about business matters. Mrs. Lounsberry was a receptionist, and later a housekeeper, at the State Hospital in St. Louis for five years; prior to that time she was in sales or demonstration work in department and grocery stores. According to her testimony, she had been in sales work all of her life until she quit in 1961, and moved permanently to Sharp County to live with her husband.[6]

We see no great significance in the fact that the insurance policies carried the names of both persons. This is not inconsistent with Mr. Lounsberry's separate ownership of the property. Of course, appellant would have dower and homestead rights, even thought the property was not held as an estate by the entirety, and as a life tenant, she would be entitled to the use of insurance proceeds.

---

[6]Appellant testified that her husband spent the summers at the Sharp County home from 1957 until 1961, and she commuted from St. Louis every other weekend to be with him. She stated that he did some of the work on the house himself, but had other men come and help him.

Mrs. Cross testified that, while she was visiting the Lounsberrys in 1959, her father told her in the presence of Mrs. Lounsberry that he would leave the property in question to the daughter. When asked what appellant said, Mrs. Cross replied:

"She said it was ridiculous: Why would I want a summer home in Arkansas when I had my own home in Franklin Park with a husband and four children; so when would we go down there? It was utterly ridiculous for him to leave it to me, because what use would I have for it."

The witness said that Mrs. Lounsberry made no claim to the property whatsoever. This conversation was denied by Mrs. Lounsberry who said that she never heard her husband discuss the ownership of this property in the presence of Mrs. Cross.

Aside from the fact that the deeds were recorded in February, 1958, nigh onto nine years before Mr. Lounsberry's death, and in addition to the other opportunities that appellant had to ascertain the names of the grantees in the deeds, Mrs. Lounsberry waited over a year after the death of her husband to institute suit; even then , the suit alleged either a clerical or mutual mistake in the execution of the deed, and it was not until some time later that the allegation of fraud was made.

Where parties to a lawsuit testify directly contrary to each other, the trier of the facts is in much better position to pass on the matter of credibility. The Chancellor was apparently not too impressed by appellant's testimony, and he found that the proof offered failed "by quite a bit to measure up to that rule [clear, concise, and convincing]." We certainly cannot say that his findings are contrary to the record.

Affirmed.