# E. H. OTTS *v.* CERTAIN LANDS ET AL

5-5632                                      472 S.W. 2d 104

## Opinion delivered November 1, 1971

*James C. Cole,* for appellant.

*Lawson E. Glover* and *David M. Glover,* for appellee.

LYLE BROWN, Justice. Appellant E. H. Otts brought suit to confirm title to three tracts of land in Hot Spring County. One tract was seventy-five acres in section nineteen, and another was forty acres in section twenty. The third tract was five acres in the northeast corner adjoining the seventy-five acres, which small tract was purchased from the State. Title to the five acres was by the chancellor vested in appellant and is not in issue on appeal. As to the other two tracts the court denied the plea of title by adverse possession, estoppel and laches,

and held that title was vested in appellant and his nephew, the appellee Hawley, as tenants in common. Appellant here contends that the findings of the chancellor were against the preponderance of the evidence.

E. K. Otts died in 1921 and was the record owner of the two tracts with which we are concerned. He was survived by one son, the appellant, and by one daughter, Abbie Otts Hawley. The daughter died in 1965, leaving as her sole heir appellee, Archie Hawley, Jr. Mrs. Hawley moved to Texas shortly before the death of her father and continued to live there the remainder of her life. Appellee has lived in Texas all his life. Appellant went into possession of the two tracts upon the death of his father. He has exercised exclusive control, paying taxes, cutting timber, selling gravel, keeping out trespassers, fencing that part which was not fenced, and entering the lands in a federal farm program of some type.

In addition to the activities incident to possession appellant testified that he at all times claimed to own the lands. He pointed specifically to an experience with the State Highway Department in 1962 wherein he asserted ownership and insists that his claim was brought home to his sister. Interstate 30 cuts diagonally across the center of one of the forties in section nineteen and touches upon the edge of the forty acres in section twenty. The highway department presented an option to purchase to appellant and he signed it. The option was then sent to Mrs. Hawley and she executed it. There was a "payee designation" attached to the option and the department filled in the blanks to provide that the settlement funds would be divided one-half to each of the owners. Appellant refused to sign the payee designation because he said he considered the property his exclusively. Consequently the highway department filed eminent domain proceedings. In that action Mrs. Hawley filed an answer and averred that she owned a one-half interest in the thirty-five acre tract in section nineteen which was cut in halves by the new highway. She did not assert any interest in that forty acres in section twenty where the highway cut across the extreme northeast corner. The condemnation proceeding was filed

July 25, 1962. Appellant filed the instant litigation April 30, 1970. Appellant insists that the wording of the option to purchase revealed to Mrs. Hawley that he was claiming both forty acre tracts; that she was advised that appellant would not agree to sharing the compensation with her; and that when she did make an assertion by way of answer she laid no claim to one of the forties touched by the highway.

Appellant insisted that his sister had been very indifferent about the property; that she never did come out to the place since the father died to discuss taxes; that she never talked to appellant about the property; and that she in fact did not attend her father's funeral. He conceded that she had been out to his house "a time or two" but that he did not see her.

On cross-examination appellant admitted that he had never told his sister, either orally or in writing, that he claimed the land as against her. It was clear that there was some degree of animosity on his part toward his sister. He said she came by once to see him and that "I told her to get on up the road." When the option to purchase was first presented appellant it was filled out to show that he had no sisters or brothers but appellant denied furnishing that information to the interviewer. Appellant has a first cousin and two second cousins living in the same neighborhood and he could not recall ever having told either of them that he was claiming the land exclusive of his sister.

Appellant introduced into the record an order of the circuit court entered in the eminent domain proceeding. It recited that appellant's ownership of the forty in section twenty which was traversed by the highway in the northwest corner of the forty was not questioned in the litigation. Consequently the clerk of the court was authorized to pay the deposit, $1,600, to appellant. With respect to the other thirty-five acres across which the highway ran, it was recited that there was a controversy between appellant and his sister about the ownership and the funds should be held in escrow.

E. F. Burns testified that for many years he was community committeeman for the farm program in the area of this land; that appellant farmed a portion of the land; that the witness lived in the community at that time; that he never had occasion to check the land title; and that he always took the application from appellant for participation in the farm project.

Appellee Archie Hawley testified in his own behalf. Summarizing, his mother died in 1965. In 1939 he came to Arkansas with his mother and they proceeded to appellant's home. Appellant ran back into the dark part of a barn and would not come out and talk to him. Appellant would have nothing to do with him or witness's mother so they left after visiting the aunts who lived with appellant. On another visit witness and his mother checked the taxes and found they were paid. He could tell the timber had been cut but his mother remarked that "Uncle Earnest (appellant) was taking care of the property over there and if he got anything over the taxes that was his good—"

One of the exhibits introduced on behalf of appellee was a letter from appellant addressed to appellee's mother. It was dated in 1922 or 1924. Appellant was answering a letter he had received from his sister. Apparently she had suggested that he buy her interest. He said he would like to have it but he could not raise a thousand dollars. He suggested that she come to Arkansas and they would make some arrangement to divide the property. As we interpret his letter he was saying he could not raise $1,000 for her one-half share in the 115 acres.

Harry Otts testified for appellee. He is a first cousin to appellant and they live in the same neighborhood. With regard to the property in litigation he testified that he never heard appellant nor his sister relate anything about the ownership of the land. He testified that appellant removed an old house from the lands and cut the timber.

George F. Otts, another cousin of appellant, was called by appellee. He testified that about fifteen years

ago he mentioned to appellant that he would like to buy the land and appellant replied that he could not sell it.

Witness June Hawley is the wife of appellee. She went to an attorney's office with appellee's mother in 1962 to execute the option to purchase agreement. She recalled the mother's receipt of notice from the highway department that appellant would not agree to a division of the compensation for the taking of the property. On cross-examination she conceded that the mother had knowledge, from information received from the highway department, that appellant would not agree that his sister had any interest in the right-of-way claim.

The activities of appellant—payment of taxes, cutting of timber, fencing, etc.—were consistent with cotenancy and did not constitute notice to appellee or his mother that appellant was claiming by adverse possession. *Phillips* v. *Carter,* 222 Ark. 724, 263 S. W. 2d 80 (1953). It was incumbent on appellant to show, by acts other than those described, that he brought to the attention of his cotenant his hostile claim by acts either direct or so unequivocal and notorious that notice has to be presumed. *Ueltzen* v. *Roe,* 242 Ark. 17, 411 S. W. 2d 894 (1967). Stronger evidence is required where there is a family relationship than in cases where no such relation exists. *McGuire* v. *Wallis,* 231 Ark. 506, 330 S. W. 2d 714 (1960).

It is our conclusion that in 1962 appellant made it known to his sister that he was claiming two forty acre tracts adversely to her. We refer to the incidents surrounding the highway condemnation. Appellant executed the option to purchase in which he claimed to be the owner of two of the quarter sections. He agreed that he would furnish the highway department good title. That instrument was mailed to appellee's mother and she took it to her lawyer in San Antonio, Texas.

Upon receipt of notice of the claim of ownership by appellant it became incumbent upon his sister (appellee's mother) to take action if she desired to interrupt

the seven year statute of limitations. The general rule is stated in 2 C. J. S. Adverse Possession, § 141:

> In order to stop the running of the statute there must be a physical interruption of adverse possession, or a suit, or some unequivocal act of ownership which interrupts the exercise of the right claimed and being enjoyed by the adverse claimant.

Some of the cases supporting the recited rule are *Daniels* v. *Jordan,* 134 So. 903 (Miss. 1931); *Batson* v. *Smith,* 51 So. 2d 749 (Miss. 1951); *Petty* v. *Petty,* 95 S. W. 2d 1122 (Ky. 1936); and *Grubbs* v. *Rick,* 212 S. W. 2d 489 (Texas 1948).

Appellee is an owner, as tenant in common, of the thirty-five acre tract bisected by the new highway. The answer filed in her behalf interrupted the enjoyment by appellant of his claimed rights in that it prevented him from drawing down funds to which he would be entitled if his claim to exclusive ownership had not been so challenged. Those funds are still in the registry of the court. The first action taken by appellant to get the funds released was the filing of this suit. With respect to the forty acre tract out of which was carved a small portion in the northwest corner, appellee's mother did not see fit, in her answer, to make any claim to that acreage, notwithstanding it was described in the option to purchase. Consequently the seven year statute has since run and title has therefore vested in appellant. See *Parham* v. *Dedman,* 66 Ark. 26, 48 S. W. 673 (1898). The third forty acre tract, which the highway does not touch, is held by appellant and appellee as tenants in common. That is because appellant never unequivocally asserted to appellee or his mother a claim of exclusive ownership to that tract.

Affirmed in part, reversed in part.