Jerry W. MORGAN, et al. *v.* George MORGAN, et al.

CA 84-337                                        688 S.W.2d 953

Court of Appeals of Arkansas
Division II
Opinion delivered May 8, 1985

*Bill W. Bristow, P.A.*, for appellant.

*Ponder & Jarboe*, for appellee.

DONALD L. CORBIN, Judge. Appellants appeal from a Partition Decree rendered by the Lawrence County Chancery Court on 104 acres of land. We reverse and remand.

In 1938, Joe Morgan died intestate as owner of 104 acres of land. He was survived by six children. There was a mortgage on the property which was satisfied by two of the sons in 1945. Two of Joe Morgan's sons then divided the property by a fence with one son, appellant Theodore Morgan, holding sixty acres, and the other son, appellant Fred Morgan, holding forty-four acres. Appellant Theodore Morgan, before his death, conveyed the sixty acres he was in possession of to his son, appellant Jerry Morgan, in 1978. Three of the other siblings, George Morgan, June Morgan Huskey, and Mae Morgan De Los Santos, appellees herein, filed suit in 1982 for partition of the property. Appellants, Jerry Morgan, special administrator of the estate of Theodore Morgan, deceased, Fred Morgan, Quinton Morgan, Jerry Morgan and his wife, Rita J. Morgan, alleged in their response that appellees' complaint for partition should be denied as they were not owners of any interest in the land and had no standing to sue. Appellants'

counterclaim alleged that they had acquired title to the property by adverse possession and that a decree should be entered confirming their title in the property. The trial court ordered the property sold and found that appellants had not acquired title by adverse possession.

On appeal, appellants argue that the trial court erred in failing to sustain their defense and counterclaim of adverse possession and laches. The general rule for establishing title by adverse possession is set forth in *Utley* v. *Ruff*, 255 Ark. 824, 502 S.W.2d 629 (1973), as follows:

> Title to land by adverse possession does not arise as a right to the one in possession; it arises as a result of statutory limitations on the rights of entry by the one out of possession. Possession alone does not ripen into ownership, but the possession must be adverse to the true owner or title holder before his title is in any way affected by the possession, and the word 'adverse' carries considerable weight . . . One of the cardinal principles of adverse possession in order that it may ripen into ownership is that the possession for seven years must have been actual, open, notorious, continuous, hostile and exclusive, and it must be accompanied with an intent to hold against the true owner.

The law is well settled that the possession of one tenant in common is presumed to be the possession of all and, further, stronger evidence of adverse possession is required of co-tenants related by family than one where no such relation exists. *McGuire* v. *Wallis*, 231 Ark. 506, 330 S.W.2d 714 (1960); *Phillips* v. *Carter*, 222 Ark. 724, 263 S.W.2d 80 (1953). We believe *Ueltzen* v. *Roe*, 242 Ark. 17, 411 S.W.2d 894 (1967), cited by appellants, provides a clear understanding of the purview of the law as it applies to the facts of the instant case. In *Ueltzen*, *supra*, the Arkansas Supreme Court stated:

> Our courts have ordinarily held that to constitute estoppel, adverse possession or laches with reference to a cotenant, that no one or two specific acts, and sometime even more, necessarily, of themselves amount to a disseisin, but the following each are items to be considered in determining whether the possession is adverse, or the individual is estopped or guilty of laches and they include

such acts as (1) possession of the property; (2) payment of taxes; (3) enjoyment of rents and profits; (4) making of improvements (particularly of a substantial nature); (5) payments of insurance made payable to himself; (6) holding possession of lands for a long period of time, such as 30 years; (7) treating property as one's own; (8) selling timber; (9) executing leases; (10) assessment of property in one's own name; (11) selling crops; (12) the execution, delivery, and recording of a deed by one cotenant which purports to convey the entire property; and (13) generally treating property as his own.

Upon examination of the facts of the case at bar within the framework of the 13 criterion listed in *Ueltzen, supra*, it is evident that there was a mortgage on the acreage at the time of Joe Morgan's death in 1938. There is evidence that appellant Theodore Morgan, shortly after 1938, attempted to get help from his other siblings to pay on this mortgage. When he was not able to do so, he attempted to make the payments himself. Finally, appellant Theodore Morgan got $500 from his brother Fred in 1945 and they were able to pay the mortgage off. Evidence in the record indicates that if this had not been done, the mortgagor, Clay Sloan, had made arrangements to sell the land to someone else. There was testimony that the land was worth no more than the mortgage against it.

Appellants Theodore and Fred Morgan divided the property in 1945 with Theodore taking sixty acres and Fred taking forty-four acres. A fence was put between the property and has been there for many years. Appellant Fred Morgan lived in a house on the forty-four acres at all times and continues to live there. It is undisputed that he rebuilt the house on the property making substantial improvements. There was testimony of a neighbor, Syble Penn, concerning improvements made by appellant Fred Morgan on the house. Taxes were paid by Theodore and Fred Morgan since the 1940's, with no tax payments made whatsoever by appellees.

It is undisputed that the first action taken by appellees to in any way assert a claim to the property was in July of 1980. It is also undisputed that substantial improvements were made between 1978 and the summer of 1980 by Jerry Morgan on the property he purchased from appellant Theodore Morgan in 1978.

Appellees made no attempt to question the ownership of appellants Fred or Jerry Morgan, who were claiming under a deed from Theodore Morgan until July of 1980. At that time appellee George Morgan had a conversation with Fred about the ownership of the property. There was further delay by appellees until 1982 when this suit was filed.

Appellant Quinton Morgan, one of the six children of Joe Morgan, candidly testified that he never thought that he had any claim to the property. He further testified that he had never heard appellees say anything to indicate that they thought they had any claim to it. Quinton Morgan indicated that when the mortgage was in effect, the land was worth no more than the mortgage against it. He stated that Theodore had asked him to have the other siblings pay their part which would be some $200 each. He testified that he asked appellee George Morgan if he could pay his share on the mortgage and George said that he did not have the money. Quinton stated that he also talked with appellee June Morgan Huskey's husband about her contribution to the mortgage payoff. Quinton Morgan confirmed that appellant Fred Morgan had paid $500 to be used on the mortgage and that Fred and Theodore Morgan had divided the property with a fence and Fred had lived on his part all of his life. In summary, Quinton testified that none of the appellees ever said anything to indicate their ownership of the property.

Appellant Fred Morgan testified that appellee George Morgan had lived in the Lawrence County area all of his life and that George had never said anything to indicate any claim of ownership in the property until three or four years prior to trial. He also stated that his sisters had never claimed an ownership interest in the property.

Dale Morgan, a son of Theodore Morgan, testified to a conversation where appellee June Morgan Huskey asked Theodore about buying some of the land from him in late 1970's. He indicated that she said nothing to Theodore in this conversation to in any way claim that she owned an interest in the property.

Syble Penn, a neighbor, testified that she didn't have any opinion other than that Fred and Theodore owned the land. They had taken care of the land and farmed the land. Fred had always taken particular care of his house. It was the general understanding of the people in the area that Fred and Theodore owned the

property.

Bill Nunnally, another resident in the Lynn area, testified that he thought Theodore had owned one side and Fred had owned the other side. He testified as to receiving permission from Theodore to haul gravel off the property for seven or eight years in the 1950's. He also spoke of Fred improving his house.

Another neighbor, Patricia Sanders, said that she had lived within forty acres of the Morgan property for the last 29 years. She said that she understood that Theodore and Fred owned the property in dispute. She received permission from them to get gravel out of the creek that ran through the 104 acres. She remembered Fred working on his house. She referred to Theodore damming up the creek and dredging it for drainage purposes in the 1950's.

Garland Bristow testified that he had lived in a house on Theodore's property which he rented from Theodore. He could not pinpoint a specific date but indicated that he had lived in his present house for more than twenty-six years and that it had been several years prior to that when he had lived on Theodore's property. He indicated that he worked for Theodore for ten or more years and confirmed the building of the levee, the keeping up of fences, the cutting of sprouts, all as being acts of ownership which he had observed on the part of appellant Theodore Morgan.

The most convincing evidence in the record are the admissions of appellee June Morgan Huskey that she and appellees, George Morgan and Mae Morgan De Los Santos, had talked about the acts of ownership by appellants each time she returned to Arkansas. This occurred every six to eight years through the 1950's, 1960's and 1970's. This is a substantial period of time in which appellee Huskey admitted actual notice of the acts of ownership exercised by appellants.

The acts of appellants place them squarely within the thirteen criterion listed in *Ueltzen, supra*, and title to the lands in question is vested in appellants Fred Morgan and Jerry and Rita Morgan by virtue of adverse possession. The decision of the chancellor granting a partition is clearly erroneous, ARCP Rule 52(a), and is reversed. We remand to the trial court to enter an order consistent with this opinion.

Reversed and remanded.

COOPER and GLAZE, JJ., agree.