Jeannette HIRSCH and Patricia HIRSCH *v.*
T. J. PATTERSON III, et al

80-80                                            601 S.W. 2d 879
Supreme Court of Arkansas
Opinion delivered July 7, 1980

*Gaughan, Barnes, Roberts, Howell & Laney*, for appellants.

*Spencer, Spencer & Shepherd*, for appellees.

RICHARD L. MAYS, Justice. In a suit between cotenants over title to 93 acres of wild and unimproved timber land, the chancellor quieted title in appellees on their claim of adverse possession. The primary question raised by appellants on appeal is whether the chancellor's finding of adverse possession is against the preponderance of the evidence. We affirm the chancellor's decision since we find sufficient evidence to support it.

Adverse possession is a rule of law which operates to transfer title to real property from the record owner to one whose possession is under a claim of title and, for seven years, is actual, open, visible, notorious, continuous and hostile to the record owner's title and the world at large. *Utley* v. *Ruff*, 255 Ark. 824, 502 S.W. 2d 629 (1973). Since possession by a cotenant is not ordinarily adverse to other cotenants, each having equal right to possession, a cotenant must give actual notice to other cotenants that his possession is adverse to their interests or commit sufficient acts of hostility so that their knowledge of his adverse claim may be presumed. *Woolfolk* v. *Davis*, 225 Ark. 722, 285 S.W. 2d 321 (1955); *Johnson* v. *Johnson*, 250 Ark. 457, 465 S.W. 2d 309 (1971). The statutory period of time for an adverse possession claim does not begin to run until such knowledge has been brought home to the other cotenants. *Gibbs* v. *Pace*, 207 Ark. 199, 179 S.W. 2d 690 (1944). While payment of taxes over a long period of time by a cotenant does not alone give title to him, it may raise a strong presumption of his adverse claim. *Brashear* v. *Taylor*, 109 Ark. 281, 159 S.W. 1120 (1913). Although there is no "hard and fast" rule by which the sufficiency of an adverse claim may be determined, courts generally look to the totality of the circumstances, considering such factors as: "[the] [r]elationship of the parties, their reasonable access to the property and opportunity or necessity for dealing with it, their right to rely upon conduct and assurances of the tenant in possession, kinship, business transactions directly or incidentally touching the primary subject matter, silence when one should have spoken [and] natural inferences arising from indifference . . ." *Linebarger* v. *Late*, 214 Ark. 278, 282, 216 S.W. 2d 56 (1948).

Appellants, Jeannette and Patricia Hirsch, are the wife and daughter of Henry Hirsch who first acquired some ownership in the subject property in 1921 but acquired an undivided one-third interest in 1947. In 1960, Henry Hirsch conveyed an undivided three-twentieth of his interest to his wife, Jeannette Hirsch, and left the remainder by will to his daughter, Patricia Hirsch, upon his death in 1973. Appellees are the children and grandchildren of Judson Patterson who acquired an undivided two-thirds interest in the 93 acres in 1920. In 1939, Judson Patterson died, leaving his undivided two-thirds interest to his wife for her lifetime, and the remainder to his surviving four children, one of whom died in 1966, leaving two children surviving him. Judson Patterson's wife died in 1971.

Neither the Pattersons nor the Hirschs ever lived on the property or developed it for agricultural or commercial purposes. The Pattersons have paid the taxes on the property since 1941 without any assistance from the Hirschs. Even before 1941, when the property was forfeited to the state because of delinquent taxes, members of the Patterson family either redeemed the property directly or acquired the interest of one who had obtained a tax deed to it. The Pattersons occasionally used the property for family picnics and exercised control over the property by expressly authorizing its use by scouting groups and a neighboring church. The Pattersons executed oil and gas leases concerning the property and sold timber wtihout dividing the proceeds with the Hirschs. The property became generally known in the community where it was situated as the "Patterson Estate."

When Henry Hirsch approached certain members of the Patterson family in the late 1950's and early 1960's about selling his one-third interest and leasing mineral rights to the property, the Pattersons advised him that they felt he no longer held an interest in the property. Despite this assertion, Henry Hirsch not only made no effort to reimburse the Pattersons for his proportionate share of the past taxes, but he continued to abstain from participating in the future tax payments. Although Henry Hirsch was known as an excellent businessman, who kept accurate business records, his daughter, serving as executrix of his estate, was unable to dis-

cern from such records Mr. Hirsch's ownership in the 93 acres when preparing an inventory of his estate after his death in 1973.

In light of the total circumstances of this case we cannot say that the evidence preponderates against the chancellor's finding. Although such acts of ownership as paying the property taxes on the property for over 35 years, or executing oil and gas leases to the property, or acquiring the entire proceeds from the sale of timber, or granting permission to various groups to use the property, by themselves, do not establish an adverse ownership as to the other cotenants, yet when taken together with Henry Hirsch's silence for at least 15 years after being informed by members of the Patterson family that they felt he no longer had an interest in the property, these acts provide ample evidence to support the finding of adverse possession. While there is some evidence that one of the Patterson family members recognized the Hirschs' interest in the property in a letter to appellants in 1976, such recognition by one family member after the statutory period for adverse possession has elapsed does not divest a title once acquired by adverse possession. See *Hart* v. *Steinberg*, 205 Ark. 929, 171 S.W. 2d 475 (1943).

Affirmed.

FOGLEMAN, C.J., HICKMAN and STROUD, JJ., dissent.