Gina WOOD, et al. *v.* Vestal D. WOOD

CA 94-852                                                   908 S.W.2d 96

Court of Appeals of Arkansas
Division I
Opinion delivered October 18, 1995
[Petition for rehearing denied November 29, 1995.]

48

*Herby Branscum, Jr.*, for appellants.

*Philip A. Bagby, P.A.*, and *Michael J. Medlock*, for appellee.

JOHN E. JENNINGS, Chief Judge. Appellee Vestal Wood filed suit to quiet title to approximately ninety acres of land in Crawford County, Arkansas. Appellants Gina Wood, Roger Wood, Jerrie Wood Neal, and Doyle Wood answered, claiming an interest in the property. They appeal from the decree quieting title in Vestal Wood.

The parties are all grandchildren of George and Amanda Wood, who lived on and held title to the property in question. George and Amanda had nine children. George died in 1943. One of their children, Crawford Wood, cared for Amanda until she moved to Kansas City where she remained until her death in about 1953. Although it appears that no one lived on the property after some time in the 1950's, Crawford paid the taxes and looked after the place until his death in about 1963.

The taxes for 1963 went unpaid, and the land was sold at tax sale. It was purchased by another of the Wood children, Elsie, and her husband Hugh Hays, who received three clerk's deeds dated November 21, 1966.

Elsie and Hugh Hays never had any children. Sometime after Hugh's death, Elsie delivered a warranty deed to the property to her nephew, appellee Vestal Wood, whose deceased father Estel was another one of the nine children of George and Amanda. That warranty deed was dated June 29, 1981, and was promptly recorded. Vestal Wood has paid the taxes on the property ever since 1981. In August 1993 appellee filed his petition seeking to quiet title.

Gina Wood, Jerrie Wood Neal, and Roger Wood are children of Ray Wood, who was one of the nine children of George and Amanda. Doyle Wood is appellee's brother. None of the other descendants of George and Amanda named in the complaint filed an answer. Appellants claimed an interest in the property by inheritance and contended that any possession by appellee was with their permission and that the payment of taxes was for their

joint benefit. They argued that any interest conveyed by the tax deeds to an heir of George and Amanda was for the benefit of all the heirs and was held in trust as a redemption.

At trial, appellee testified that he acquired title to the property by the 1981 warranty deed from Elsie, had paid taxes on the property since then, and that he considered the land his. He had granted easements to Southwestern Bell and to a neighbor for a road. He testified that he lived four miles from the property and visited the land about once a week. He had done brushhogging and "dozer work," and allowed a neighbor to run some horses and cows on the land.

Appellee testified that some time in 1981 or 1982 Ray Wood asked appellee about having five acres of the property for Gina, and that appellee intended to see that Gina got five acres. Appellee then met Gina on the property, but testified that her request increased to ten, then fifteen, then twenty-two and a half acres. Appellee told her he would have to obtain a clear title before he could convey anything. Then appellee's brother Doyle asked for a place to build but appellee refused Doyle's request for forty acres. Appellee denied that he ever held the property "in trust" for any other family members. He testified that his Aunt Elsie was very precise in the handling of her affairs and would have put in writing any intentions regarding other family members. Elsie's will left all of her estate, except for a $1,000.00 gift to a neighbor, to appellee. He testified that from 1981 on he considered the property to be his.

Appellant Gina Wood testified that when the taxes on the property were delinquent, her father Ray went to the courthouse to pay them and discovered that Elsie and Hugh Hays had already paid them and taken the tax deeds. Gina testified that Elsie visited her father's home on many occasions and that she often heard them discuss the property. She testified that after Hugh Hays died, Elsie tried to turn the property over to her to take care of, but Gina felt that her aunt was upset over her husband's death and that they should talk about it later. Gina was aware that Elsie gave a deed to appellee in 1981, but testified that she believed appellee was going to take care of it and "give all of the Wood family their part of the land." Gina testified that right after Elsie died in January 1992 she and her sister Jerrie met appellee on the

land and he told her that "he was still going to give me Daddy's part of the land[.]" She testified that she and Jerrie and appellee all went to the attorney's office together, and she provided names of all the heirs she was aware of, in an effort to help clear up the title so appellee could give her her share. Her father Ray died in June 1992. She testified that she heard nothing else from appellee regarding the property until he filed suit in 1993.

After hearing the testimony and considering the evidence, the chancellor found that title should be vested in appellee, stating:

> The Court is satisfied that this property was not held in trust by him and that he has obtained title to this property by warranty deed and any challenge to his ownership of the property is barred by law at this time.

Appellants argue that as there was no finding of adverse possession, appellee's claim is based solely upon the 1981 deed to him from Aunt Elsie. They argue that when Aunt Elsie purchased the property by tax sale in 1966 she did so as a tenant in common with the other heirs of George and Amanda. Appellants argue that her purchase at tax sale was no more than a redemption for the benefit of all the cotenants; as such, she acquired no more by purchase at the tax sale than what she already had, i.e., her undivided interest as a tenant in common. Appellants argue that the chancellor erred in holding "that appellee acquired his title by conveyance from his aunt, Elsie Hays, in 1981[.]" Appellants argue:

> The only basis stated by the chancellor [in the decree quieting and confirming title in the appellee] is that appellee received a conveyance by warranty deed in 1981. This warranty deed was from an aunt who had purchased the property at a tax sale as a cotenant in 1966 and her purchase did not give her any title other than what she already owned.

A tenant in common is presumed to hold in recognition of the rights of his cotenants and this presumption continues until an actual ouster is shown. *Baxter* v. *Young*, 229 Ark. 1035, 320 S.W.2d 640 (1959). Since possession by a cotenant is not ordinarily adverse to other cotenants, each having an equal right to possession, a cotenant must give actual notice to other cotenants that his possession is adverse to their interest or com-

mit sufficient acts of hostility so that their knowledge of his adverse claim may be presumed. *Hirsch* v. *Patterson*, 269 Ark. 532, 601 S.W.2d 879 (1980). The statutory period of time for an adverse possession claim does not begin to run until such knowledge has been brought home to the other cotenants. *Gibbs* v. *Pace*, 207 Ark. 199, 179 S.W.2d 690 (1944). When there is a family relation between cotenants, stronger evidence of adverse possession is required. *Ueltzen* v. *Roe*, 242 Ark. 17, 411 S.W.2d 894 (1967).

When Elsie Hayes bought in the property at tax sale she acquired no additional rights as against her cotenants. *See William* v. *Anthony*, 182 Ark. 810, 32 S.W.2d 817 (1930). Such a purchase by a tenant in common amounts to a redemption and confers no right except to demand contribution from the cotenant. *Hollaway* v. *Berenzen*, 208 Ark. 849, 188 S.W.2d 298 (1945). Her possession would be construed as the common possession of all the tenants in common until she did some act of ouster or notified the others that her possession was exclusive. *Sanders* v. *Sanders*, 145 Ark. 188, 224 S.W. 732 (1920). Similarly, when the appellee, Vestal Wood, who was also a cotenant, obtained the warranty deed from Elsie Hayes in 1981, he acquired no title to the interest of his cotenants. A tenant in common cannot acquire title to the interest of his cotenants by purchasing the property from a third party who bought at the tax sale. *Johnson* v. *Johnson*, 250 Ark. 457, 465 S.W.2d 309 (1971). Had Vestal Wood been a stranger to the title, rather than a cotenant, Elsie's deed to him would have constituted color of title and his entry into possession would have commenced the running of the statutory period as against the other cotenants. *Marshall* v. *Gadberry*, 303 Ark. 534, 798 S.W.2d 99 (1990). Since Vestal Wood was a cotenant the deed to him from Elsie Hayes would not constitute notice of an adverse claim.

Mere lapse of time will not dissolve a cotenancy. *Hollaway* v. *Berenzen*, 208 Ark. 849, 188 S.W.2d 298 (1945). On the record in the case at bar we can find no acts on the appellee's part sufficient to constitute the ouster required to commence the running of the statute of limitations. We therefore reverse the decree that quieted title in the appellee, and remand

this case to the trial court for further proceedings in keeping with this opinion.

Reversed and remanded.

PITTMAN and ROBBINS, JJ., agree.