Daniel Black DILLARD *v.* Lynda PICKLER,
George Pickler, and Edna Bussey

CA 99-333 6 S.W.3d 128

Court of Appeals of Arkansas
Division III
Opinion delivered December 15, 1999

*Craig L. Henry*, for appellant.

*Cary E. Young*, for appellees.

JOHN MAUZY PITTMAN, Judge. This is an adverse-possession case. Appellant Daniel Dillard appeals the Lafayette County Chancery Court's order granting the appellees' counterclaim requesting that the court quiet title in them to a forty-acre parcel of unenclosed timberland in Lafayette County. We affirm.

To understand the issue that appellant presents, we must first review the manner in which the parties acquired their respective interests in the forty acres of timberland at issue. The history of the parties' respective interests in the land dates back to October 1913 when the Lafayette County Chancery Court entered a decree partitioning a larger parcel of land that included the forty acres at issue. In this decree, the chancery court awarded the forty acres at issue to the Woodmore family, which consisted of six siblings — Mary Woodmore, Martha Woodmore, Robert Woodmore, Jona Woodmore, Lacie Allen, and Lillie Pearl Collins. In 1932, the land was forfeited to the State for nonpayment of property taxes. In 1936, two of the Woodmore siblings, Lacie Allen and Lillie Pearl Collins McGlothin, paid the delinquent property taxes and received title to the land from the State. In March 1953, Lacie Allen and Lillie Pearl McGlothin sold the land to appellee Edna Bussey and her husband Harry Bussey, who died in 1992. The Busseys received from Lacie and Lillie a warranty deed to the entire forty-acre parcel. The Busseys paid property taxes on the land from 1953 to 1992. Appellee Lynda Pickler is the daughter of Harry and Edna Bussey. Her interest in the land is based on having received an undivided one-half interest in the land from her mother in 1993 in an executor's deed and by a quitclaim deed that appellee Edna Bussey executed in

January 1998. Appellee George Pickler is appellee Lynda Pickler's husband, and his interest in the land derives from that of his wife.

Appellant Daniel Dillard claims a one-half interest in the land. Appellant acquired his interest in the land in 1993. In 1993, appellant worked in an abstract company in Lafayette County. At that time he realized that the heirs of the Woodmore siblings might have an interest in the forty acres. By 1993, none of the six Woodmore siblings were alive. Only two of them had had children. Jona Woodmore had a son named Jonah Johnson. Mary Woodmore had a daughter named Daisy Thomas Butts. By 1993, neither Jonah Johnson nor Daisy Thomas Butts was alive; however, Jonah's widow, Effie Johnson, and Daisy's widower, Linton Butts, were still living. In 1993, appellant purchased from Effie Johnson and from Linton Butts their respective interests, as the heirs of the six Woodmore siblings, in the forty acres. Appellant received warranty deeds from both Effie Johnson and Linton Butts. In 1993, appellant began paying property taxes on his one-half interest in the land.

Proceedings began in chancery court in June 1997 when appellant filed a petition requesting that title to one-half of the forty acres of timberland be quieted in him and that the land be partitioned. In July 1997, appellees filed a response to appellant's quiet-title petition in which they denied that appellant had any interest in the land. In January 1998, appellees filed an amended response to appellant's petition and also filed a counterclaim in which they requested that title to the land be quieted in them.

The case went to trial in chancery court in September 1998. At trial it was established that the forty acres at issue was unenclosed timberland. Moreover, appellees established that Harry and Edna Bussey had, after purchasing the land in 1953 from Lacie Allen and Lillie Pearl McGlothin, paid property taxes on it from 1953 to 1992. Appellees also proved that, on several occasions, Harry and Edna Bussey had received proceeds from the sale of timber on the land and had also received the proceeds from two oil and gas leases on the land. The appellees also presented proof that, from 1953 to 1992, no one had tried to establish any ownership interest in the land, other than Harry and Edna Bussey. However, appellant established that the Busseys had never actually possessed the land, had never enclosed the land with a fence, and had never improved the land. The chancery court took the case under advisement and

permitted the parties to submit posttrial briefs. In December 1998, the chancery court handed down an order granting appellees' counterclaim requesting that title to the land be quieted in them. In its order the court noted that appellees Edna Bussey and Lynda Pickler own the land "by virtue of title documents and adverse possession...." After the chancery court entered its order, the parties filed a set of stipulations with the court. One of these stipulations was: "Lillie and Lacie's undivided interests are currently of paper title in [appellees]. Effie and Daisy's indicated interests are currently of paper title in [appellant]."

Appellant challenges the chancery court's conclusion that Harry and Edna Bussey adversely possessed the forty acres of timberland at issue. According to appellant, the appellees failed to establish that the Busseys adversely possessed the land because appellees failed to prove that the Busseys gave actual or constructive notice to the Woodmore siblings, or their heirs, that they had purchased the forty acres from two of the Woodmore sisters, Lacie Allen and Lillie Pearl McGlothin.

Although we try chancery cases *de novo* on the record, we do not reverse unless we determine that the chancery court's findings were clearly erroneous. *Anderson v. Holliday*, 65 Ark. App. 165, 986 S.W.2d 116 (1999); Ark. R. Civ. P. 52(a). A chancery court's finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Lammey v. Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998). In reviewing a chancery court's findings, we defer to the chancellor's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Jennings v. Burford*, 60 Ark. App. 27, 958 S.W.2d 12 (1997).

Appellant's contention that the chancery court erred in finding that appellees owned the land at issue by adverse possession rests on a well-established body of case law principles. We recently set forth these principles as follows:

It is well settled that, in order to establish title by adverse possession, appellee had the burden of proving that she had been in possession of the property continuously for more than seven years and that her possession was visible, notorious, distinct, exclusive, hostile, and with intent to hold against the true owner. The proof

required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over her own property and would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted. Whether possession is adverse to the true owner is a question of fact. *See Walker v. Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1990); *Hicks v. Flanagan*, 30 Ark. App. 53, 782 S.W.2d 587 (1990).

*McLaughlin v. Sicard*, 63 Ark. App. 212, 216-17, 977 S.W.2d 1, 3 (1998) (quoting *Moses v. Dautartas*, 53 Ark. App. 242, 244, 922 S.W.2d 345, 346 (1996)).

 Because, in the 1930s, the Woodmore siblings owned the forty acres of timberland as co-tenants, our analysis is guided by the legal principles pertaining to the ownership of land by co-tenants and the adverse possession of land by one co-tenant hostile to the interests of other co-tenants. With regard to the issue of adverse possession, the possession of one tenant in common is the possession of all the tenants in common. *Graham v. Inlow*, 302 Ark. 414, 790 S.W.2d 428 (1990); *Mitchell v. Hammons*, 31 Ark. App. 180, 792 S.W.2d 333 (1990). Because possession by a co-tenant is not ordinarily adverse to other co-tenants, each having an equal right to possession, a co-tenant must give actual notice to other co-tenants that his possession is adverse to their interests or commit sufficient acts of hostility so that their knowledge of his adverse claim may be presumed. *Wood v. Wood*, 51 Ark. App. 47, 908 S.W.2d 96 (1995); *Mitchell v. Hammons, supra.* A co-tenant is presumed to hold in recognition of the rights of his co-tenants, and this presumption continues until an actual ouster is shown. *Wood v. Wood, supra.* When one of several co-tenants redeems land previously forfeited for nonpayment of property taxes, the redeeming co-tenant acquires no superior right to the land and the redemption inures to the benefit of all of the co-tenants. *Barr v. Eason*, 292 Ark. 106, 728 S.W.2d 183 (1987); *Wood v. Wood, supra.*

 When a co-tenant executes a deed to a stranger to the title, purporting to convey the entire property, the deed constitutes color of title. When the grantee enters into exclusive possession under such deed, the seven-year period for adverse possession begins to run in favor of the grantee and against all the other co-tenants of the grantor. *Ulrich v. Coleman*, 218 Ark. 236, 235 S.W.2d

868 (1951); *see Marshall v. Gadberry*, 303 Ark. 534, 798 S.W.2d 99 (1990); *Mitchell v. Hammons, supra.* However, where the stranger-grantee does not enter into exclusive possession under the deed, the seven-year period for adverse possession does not begin to run absent some other manner of notice, actual or constructive, to the other co-tenants. *See Barr v. Eason, supra; Parsons v. Sharpe,* 102 Ark. 611, 145 S.W. 537 (1912). A stranger-grantee's possession of color of title and payment of property taxes alone, without actual or constructive notice to the remaining co-tenants of the stranger-grantee's purchase of the land, is not sufficient to vest title in the stranger-grantee, *Barr v. Eason, supra,* but the payment of taxes over a long period of time may raise a strong presumption of his adverse claim. *Hirsch v. Patterson,* 269 Ark. 532, 601 S.W.2d 879 (1980) (citing *Brasher v. Taylor,* 109 Ark. 281, 159 S.W. 1120 (1913)). Where one co-tenant has actual notice that his fellow co-tenants believe that he has no interest in the land at issue, the other co-tenants can adversely possess the land if the co-tenant with actual notice does nothing for many years and the other co-tenants pay property taxes on the land for many years, execute oil and gas leases to the property, and receive the proceeds from the sale of timber. *Hirsch v. Patterson, supra.*

Appellees presented evidence at trial that, from 1953 to 1992, Harry and Edna Bussey had paid property taxes on the land, had on several occasions received the proceeds from the sale of timber on the land, and also had on two occasions received the proceeds from the execution of oil and gas leases on the land. Proof of this conduct by the Busseys was sufficient to support a finding of adverse possession of the land if the heirs of the Woodmore siblings had actual or constructive notice that Lacie Allen and Lillie Pearl McGlothin had sold the land to the Busseys in 1953. *See Hirsch v. Patterson, supra.* At trial, through the testimony of Lillie Mae Whitfield, who was a lifelong friend of Daisy Thomas Butts, appellees presented evidence that both Daisy Thomas Butts and Jonah Johnson were aware in the 1950s that the Busseys had purchased the land at issue from their aunts, Lacie Allen and Lillie Pearl McGlothin. Appellant stipulated after trial that his one-half interest in the land was based on the interest of Effie Johnson and Daisy Thomas Butts. Lillie Mae Whitfield's testimony would support a finding that appellant's predecessors-in-interest had actual notice that Lacie Allen and Lillie Pearl McGlothin had sold the land to Harry and

Edna Bussey in 1953. Given the proof of actual notice by appellant's predecessors-in-interest and the lack of any action taken by them, the Busseys' payment of taxes for forty years, and the Busseys' conduct with regard to the land, the chancery court did not err in concluding that the Busseys adversely possessed the forty acres. *See Hirsch v. Patterson, supra.*

For the reasons set forth above, we affirm the order that the Lafayette County Chancery Court entered in this case granting appellees' request that title to the land at issue be quieted in them.

Affirmed.

NEAL and MEADS, JJ., agree.