Garland TRICE, *et al.* *v.* Ossie TRICE, *et al.*

CA 04-405                                              210 S.W.3d 147

Court of Appeals of Arkansas
Opinion delivered June 15, 2005

*Hewett Law Firm*, by: *Marceliers Hewett*, for appellants.

*Lewellen & Associates*, by: *Roy C. Lewellen*, for appellees.

LARRY D. VAUGHT, Judge. Garland Trice, Ethel Green, Mattie Mason, and Margaret Dorsey (appellants) filed a petition to partition 171 acres in Moro, Arkansas. In response to the petition, Trenton Trice counterclaimed to be declared the sole owner of the property based on adverse possession and his exclusive possession of the property.[1] After a hearing on the matter, the trial court concluded that Trenton held the land in question adversely to appellants and "that the title is in dispute. As a result, partition can not (sic) be granted." On appeal, appellants argue that the trial court erred in its refusal to grant partition and in its finding that the adverse-possession counterclaim was timely and meritorious. We affirm the trial court's denial of partition, albeit on other grounds, and the trial court's conclusion that title is in dispute. However, because a finding of adverse possession is legally and logically inconsistent with a finding that title is in dispute, we reverse and dismiss the trial court's declaration that Trenton proved exclusive ownership interest in the land via adverse possession.

The property in question was originally owned by the parties' predecessor, R.H. Slaughter, who died in 1943 and was survived by several children: Captola Miller, Robert Slaughter, Beatrice Dean, Ollie Ketchum, and Henry Slaughter. His daughter Essie Trice predeceased him, and her children were John, Derothea, appellant Ethel Green, appellant Mattie Mason, appellant Garland Trice, and appellant Margaret Dorsey. Captola Miller died in 1946 and was survived only by her husband, Charley Miller. A partition suit was filed in Lee County Circuit Court, and the property was divided into five tracts in an order dated Septem-

---

[1] Trenton Trice died during the course of this litigation, and the defense to the partition petition was presented by his son, Eoies Trice, as heir of Trenton Trice. Although one of Trenton's surviving children, Ossie, was named as a party, the complaint was never amended to add Trenton's other surviving children — Eoies and Irma Jean — to the action. In addition to Trenton and Ossie Trice, Lenora Trice was also named as a defendant in this action. For sake of clarity, when referencing the appellees in this appeal, the singular name of Trenton Trice will be used.

ber 15, 1950. One tract was awarded to Henry Slaughter in fee simple; another tract was vested in fee simple in Robert Slaughter and Beatrice Dean as tenants in common; a third tract was vested in fee simple in Ollie Ketchum; a fourth tract was vested in fee simple in Trenton Trice, Derothea Trice, Ethel Green, Mattie Mason, John Trice, Garland Trice, and Margaret Dorsey as tenants in common; Charley Miller was awarded a life estate in the fifth tract, which was otherwise vested in fee simple in Ollie Ketchum, Henry Slaughter, Robert Slaughter, and Beatrice Dean, each of whom received an undivided one-fifth interest, and in Trenton Trice, Derothea Trice, Ethel Green, Mattie Mason, John Trice, Garland Trice, and Margaret Dorsey, who shared an undivided one-fifth interest (they each had an undivided one-thirty-fifth interest in the tract). According to appellants, Robert Slaughter died, leaving two sons whose names and whereabouts are unknown; Beatrice Dean died, survived by her son, Sonny, who died without a widow or children; Ollie Ketchum died, leaving no spouse or children, as did Henry Slaughter; and Essie's son John, who died in 1976, was survived only by his widow, appellee Lenora Trice.

Following the entry of the 1950 partition order, Trenton took possession of all of the property. In support of the claim that Trenton adversely possessed the land in dispute, testimony was presented that he and his son Eoise managed, paid taxes on, farmed, leased, and collected and kept the rent on the property. There was also testimony that Trenton issued various deeds to the property. However, because no deeds were introduced to reflect these (or any other) conveyances, the trial court made "no finding that the conveyances actually occurred." There was also testimony that Trenton and Eoise prohibited Garland Trice from coming onto the property and that in 2000 Ossie redeemed a portion of the property that had been forfeited to the state for failure to pay taxes.

After several continuances and appellants' obtaining new counsel, this case was scheduled for trial on October 21, 2003. That morning, "Trenton Trice and Eoise Trice as heir" filed a counterclaim asserting adverse possession of the property, which is an affirmative defense to partition. Appellants objected to the filing of the counterclaim, arguing that it was untimely. In response, Trenton's counsel stated that he would not object to a continuance. However, because this case had been pending for so long, appellants' counsel responded that he did not want to delay it any further. The trial court questioned whether all of the necessary

parties were included in the action, and appellants' counsel assured the court that they were. The partition claim then went to trial with Trenton asserting the defense of adverse possession.

The trial court found merit in the adverse-possession claim. It concluded that Trenton acted as if he owned the property in fee simple — he farmed it, rented it, kept the rent proceeds, and took responsibility for the taxes on the land. The trial court also stated that "more importantly as a sign of sole ownership, Mr. Trice issued deeds, in fifteen (15) acre parcels . . ." In addition to these acts of ownership, the trial court noted that "Trenton Trice[,] and later his son, Eoise Trice[,] prohibited Garland Trice from coming onto the property or asserting any acts of ownership to contradict the Trenton Trice claim to the property." As a result of these findings, the trial court concluded that title was in dispute and partition could not be granted because Trenton proved that he held the land in question adversely to appellant.

■ ■ At the outset, we consider the primary question presented on appeal, whether the trial court erred in its refusal to grant the petition for partition. The requirements for a partition petition are set out in Ark. Code Ann. § 18-60-401(b)(1) (Repl. 2003), which provides that everyone having an interest in the land and the amount of the interest *shall* be set forth in the petition. In their petition, appellants relied on the 1950 partition order to describe the relative property interests of R.H. Slaughter's heirs. By appellees' admission, at least ten heirs of R.H. Slaughter have died, and the names and relative interests of their successors have not been determined. The petition appears to assume that, when an heir died without children, his or her interest reverted to the other co-tenants. However, the 1950 order contained no language indicating that the fee simple grants gave rights of survivorship to the remaining co-tenants. Because appellants failed to identify the precise interests held in the property they are seeking to divide, a grant of partition would not only be improper, it would be impossible. Thus, we conclude that the partition petition was properly denied, and we affirm the trial court's ruling, albeit for a different reason. *Moore v. Wallace*, 90 Ark. App. 298, 205 S.W.3d 824 (2005).[2]

---

[2] As for appellants' argument that the trial court erred in denying partition partially on the ground that two of Trenton's heirs were not named as defendants, it is well settled that all

■ Appellants also contend that the trial court erred in failing to strike the adverse possession counterclaim as untimely because it was filed the morning of trial. However, under Ark. R. Civ. P. 15(a), with certain exceptions not applicable here, a party may amend his pleadings at any time without leave of the court, unless, upon motion of an opposing party, the court determines that prejudice would result or disposition of the cause would be unduly delayed. The Reporter's note 1 to this rule states: "Generally speaking, it is the intent of this rule that amendments to pleadings should be permitted without leave of the court in all instances unless it can be demonstrated that prejudice or delay would result." In those instances, the court may strike the amended pleading or grant a continuance. *Odaware v. Robertson Aerial-AG, Inc.*, 13 Ark. App. 285, 683 S.W.2d 624 (1985). The trial court has broad discretion in allowing or denying amendment of the pleadings. *Stoltz v. Friday*, 325 Ark. 399, 926 S.W.2d 438 (1996).

■ Here, appellants' counsel did not make a showing of prejudice, refused to request a continuance (despite the fact that appellees' attorney stated that he would not object to one), and indicated that he wished to proceed with the trial. Given the trial court's broad discretion in these matters, and the liberal nature of the rules governing amended pleadings, we cannot say that its decision constituted an abuse of that discretion. Accordingly, we affirm on this issue.

Finally, appellants argue that the trial court erred in finding that Trenton adversely possessed the property. Although we have decided that partition was correctly denied, we still must address the adverse-possession claim because it was presented both as a defense to partition and as an independent counterclaim. In its letter opinion, the trial court discussed Trenton's acts of possession and stated that it could not grant partition because Trenton had proven that the land was held adversely to appellants and that the title was in dispute. These conclusions cannot co-exist because they are mutually exclusive — either Trenton established through adverse possession sole ownership of the property and title should have been quieted in his favor or title was in dispute.

---

persons whose rights might be affected by the determination of a controversy involving land must be made parties to an action. *Koonce v. Mitchell*, 341 Ark. 716, 19 S.W.3d 603 (2000).

■■ It is well settled that land cannot be partitioned that is held adversely or to which the title is in dispute. *Kinkead v. Spillers,* 336 Ark. 60, 983 S.W.2d 425 (1999). Whether possession is adverse to the true owner is a question of fact. *White River Levee Dist. v. Reidhar,* 76 Ark. App. 225, 61 S.W.3d 235 (2001). We will not reverse a trial court's finding regarding adverse possession unless it is clearly erroneous. *Dillard v. Pickler,* 68 Ark. App. 256, 6 S.W.3d 128 (1999). A finding is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. *Id.*

■ To prove the common-law elements of adverse possession, a claimant must show that he has been in possession of the property continuously for more than seven years and that his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *White River Levee Dist. v. Reidhar,* 76 Ark. App. at 228, 61 S.W.3d at 237. It is ordinarily sufficient proof of adverse possession that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another. *Id.* A claimant may "tack on" the adverse-possession time of an immediate predecessor in title. *Id.*

■ Additional factors, however, come into play when one co-tenant asserts adverse possession against the others, because the possession of one tenant-in-common is the possession of all. *Hopper v. Daniel,* 72 Ark. App. 344, 38 S.W.3d 370 (2001). Because possession by a co-tenant is not ordinarily adverse to other co-tenants, each having an equal right to possession, a co-tenant must give actual notice to other co-tenants that his possession is adverse to their interests or commit sufficient acts of hostility so that their knowledge of his adverse claim may be presumed. *Id.* The statutory period of time for an adverse-possession claim does not begin to run until such knowledge has been brought home to the other co-tenants. *Id.* There is no hard-and-fast rule by which the sufficiency of an adverse claim may be determined; however, we consider factors such as the relationship of the parties, their reasonable access to the property, kinship, and innumerable other factors to determine if non-possessory co-tenants have been given sufficient warning that the status of a co-tenant in possession has

shifted from mutuality to hostility. *Id.* When there is a family relation between co-tenants, stronger evidence of adverse possession is required. *Id.*

There was testimony that Trenton claimed ownership of all of the land, farmed the property, made improvements on it, leased it, paid taxes on it, and exercised exclusive control over it since the 1950s. However, because a tenant in common is presumed to hold the property in recognition of the rights of his co-tenants, all of these acts were consistent with the types of action a co-tenant — especially a family member — can take without giving notice of an adverse claim to his co-tenants. We acknowledge that testimony was presented indicating that Trenton issued several deeds to the property. However, no deeds were introduced reflecting these conveyances. Based on this lack of proof, the trial court refused to find "that the conveyances actually occurred." Despite this finding, the trial court went on to conclude that the fact that Trenton made these conveyances was an important sign of his sole ownership of the property. In our analysis, we resolve this contradiction by giving no weight to the alleged conveyances based on the trial court's refusal to recognize that Trenton actually conveyed the property.

Therefore, we are left with the testimony that Garland was forced to leave the property on a couple of occasions as the only persuasive proof of an adverse action against a co-tenant. However, Garland was only one of the potentially large number of co-tenants, and, in the absence of evidence showing acts of hostility toward the other co-tenants, Garland's removal from the property cannot be characterized as anything other than an adverse act against a singular co-tenant. Further, as discussed previously, the various interests in the property have not been sufficiently identified. Thus, it would be very difficult, if not impossible, to prove actual notice to or hostile acts against unidentified co-tenants. We are convinced that the evidence of Trenton's adverse possession claim falls short of the heavy burden that a family-member co-tenant must satisfy to establish adverse possession against his co-tenants. Therefore, we hold that the trial court's finding of adverse possession is clearly erroneous, and we reverse and dismiss on this issue.

Affirmed in part; reversed and dismissed in part.

BIRD and GRIFFEN, JJ., agree.