Cite as 2021 Ark. 199

# SUPREME COURT OF ARKANSAS
No. CV-19-786

| | |
|---|---|
| | **Opinion Delivered:** November 4, 2021 |
| IN THE MATTER OF THE ESTATE OF ROBERT H. SLAUGHTER, DECEASED | APPEAL FROM THE LEE COUNTY CIRCUIT COURT [NO. 39PR-16-8] |
| GARLAND TRICE, JR.<br>APPELLANT | HONORABLE CHALK MITCHELL, JUDGE |
| V. | |
| EOIES TRICE AND OCIE TRICE<br>APPELLEES | REVERSED AND DISMISSED; COURT OF APPEALS OPINION VACATED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Garland Trice, Jr. (Garland Jr.), appeals a Lee County Circuit Court decree quieting and confirming title in 173.5 acres of Lee County property in favor of appellees Eoies Trice and Ocie Trice. For reversal, Garland Jr. argues that the circuit court erred in quieting title because Eoies and Ocie failed to present a prima facie case of adverse possession. We reverse and dismiss.

## I. *Facts*

R.H. Slaughter, who owned the property at issue, passed away in 1943. Although he had a will, it was not probated. R.H. Slaughter had six children—Capitola Miller, Ollie Ketchum, Henry Slaughter, Beatrice Dean, Robert Slaughter, and Essie Trice. Of those six children, only Essie Trice and Robert Slaughter had children who survived them. Essie had seven children—Trenton Trice, Garland Trice, Sr. (Garland Sr.), Mattie Mason, Ethel Green,

John Trice, Dorothea Trice, and Marguerite[1] Dorsey. Robert had two children who moved to Chicago in the 1950s, and the family has not heard from them since that time. Robert's children and any of their descendants are hereinafter referred to as "Robert Slaughter's unknown heirs."

## A. Previous Litigation

On September 15, 1949, the Lee County Chancery Court entered a decree dividing the property into five tracts belonging to Ollie Ketchum, Robert Slaughter, Henry Slaughter, Beatrice Dean, and Essie Trice's seven children.[2] Capitola Miller died in 1946, but her surviving spouse, Charley Miller, was also awarded a life estate in one of the five tracts.

In 1985, several of Essie Trice's children—Garland Sr., Dorothea, Ethel, Mattie, and Marguerite—filed a partition petition in chancery court against their brother Trenton; his son Ocie; Lenora, John Trice's surviving spouse; Robert Slaughter's unknown heirs; and Lenner Broadway, a tenant on the property. The chancery court entered a consent decree on August 7, 1985, dividing ownership of the property as follows: (1) Robert Slaughter's unknown heirs owned 50 percent and Essie Trice's heirs owned 50 percent of Tract 1; (2) Robert Slaughter's unknown heirs owned 75 percent and Essie Trice's heirs owned 25 percent of Tract 2; (3) Robert Slaughter's unknown heirs owned 50 percent and Essie Trice's heirs owned 50 percent of Tract 3; (4) Essie Trice's heirs owned 100 percent of Tract 4; and

---

[1]Marguerite is also referred to in some pleadings and documents as "Margret" or "Margaret." For purposes of this opinion, she is referred to as Marguerite.

[2]Essie Trice predeceased her father, R.H. Slaughter.

(5) Robert Slaughter's unknown heirs owned 50 percent and Essie Trice's heirs owned 50 percent of Tract 5. The court also found that "all parties agree that the respective tracts cannot be equitably divided in kind and that it would be to the best interest of all parties that the tracts be sold at public auction and the proceeds distributed to the respective owners as their interests appear." An auction and distribution never occurred.

In 1997, Garland Sr., Ethel, Mattie, and Marguerite filed a petition to partition the property against Trenton, Ocie, Lenora, and Robert Slaughter's unknown heirs. Trenton filed a counterclaim seeking to quiet title to the property on the basis of his adverse-possession claim. After a hearing, the circuit court denied the partition petition and concluded that Trenton held the property adversely to the petitioners. The court of appeals affirmed the circuit court's partition ruling but reversed and dismissed the circuit court's finding that Trenton established ownership of the property through adverse possession. *Trice v. Trice*, 91 Ark. App. 309, 312, 210 S.W.3d 147, 149 (2005).[3]

## B. Present Case

On February 26, 2016, three of Garland Sr.'s children—Essie Trice-Hewett, Ernest J. Trice, and Kalven L. Trice—filed a petition for appointment of co-administrators and a partition petition in the circuit court. On September 14, 2016, Trenton's sons, Eoies and Ocie, filed a counterclaim to quiet title, asserted that they owned the property through

_____

[3]The court of appeals noted that Trenton died during the course of this litigation, and his other son, Eoies, participated in the proceedings as Trenton's heir. *Id.* at 312 n.1, 210 S.W.3d at 149 n.1.

3

adverse possession, and named forty known heirs of R.H. Slaughter as third-party defendants. On January 18, 2018, Eoies and Ocie filed an affidavit for warning order in which they stated that they had been unable to ascertain the whereabouts of the forty third-party defendants. A warning order was issued that same day.[4] On February 26, 2018, a proof of publication was filed with the circuit court. It stated that the warning order had been published in the Marianna *Courier-Index* on January 31 and February 7.

---

[4]The warning order stated, in part, that

[t]he Petitioners/Counter Defendants Essie Trice-Hewett, Earnest J. Trice, and K[a]lven Trice and Third Party Defendants Garland Trice, Jr., Jeffery D. Trice, Herbert Trice, Addie Evans, Viol Trice, Geraldine Trice, Larry Trice, Ethel Green, Gertha Williams, Darrell Trice, Lynda L. Trice, Nicole Latrice Trice, Aristean Davis, Ivia Jean Trice, Irene Trice, Ashley Mason, Evan Mason, Donna Mason, Wayne Mason, Clyde Mason, Geferol Mason, Ivan Mason, Mack Mason, Marion Mason, Sheila Mason Laususe, Sylinda James, Bruce Edward Harris, Willesta Dorsey, Lee Sherman Dorsey, Barbara Dorsey, Carla Dorsey, Maria Dorsey, Edward Dorsey, Marcus Dorsey, Prince Dorsey, Angie Dorsey, Marcus Dorsey, Malvin Dorsey, Kenya Mason, and Clementine Ross; and any other survivors of Robert H. Slaughter, deceased and any persons or entities who may claim any interest in hereinafter described real property located in Lee County, Arkansas, are warned to appear in this Court within thirty (30) days and answer the petition of the Respondents, Counterclaimants, Third Party Plaintiffs Eoies Trice and Ocie Trice.

It also contained the following description of the property:

Parcel 01-02104: 10-2N-1W E1/2 E1/2 SW1/4 40 Acres
Parcel 01-02105: 10-2N-1W FRL W1/2 E1/2 SW1/4 16 Acres
Parcel 01-02106: 10-2N-1W FRL W1/2 E1/2 SW1/4 24 Acres
Parcel 01-02109: 10-2N-1W FRL E1/2 SW1/4 SW1/4 13.39 Acres
Parcel 01-02111: 10-2N-1W W 6.7 AC of N1/2 SE1/4 6.7 Acres
Parcel 01-02111-01: 10-2N-1WE 73.3 AC of N1/2 SE1/4 73.3 Acres

On August 20, 2018, a notice of quiet-title action was filed in circuit court; it contained a description of the property and advised any interested parties to appear for trial on November 14 "to assert his/her title or interest in such property and to demonstrate why title to this property should not be quieted and confirmed in" Eoies and Ocie. On September 20, 2018, a proof of publication was filed with the circuit court showing publication of the notice of quiet-title action in the Marianna *Courier-Index* on August 22, August 29, September 5, and September 12.

On November 14, 2018, the circuit court held a trial on the partition petition and the adverse-possession counterclaim. On March 7, 2019, the circuit court entered a decree quieting and confirming title in favor of Eoies and Ocie and declaring all other claims null and void.

Garland Jr. filed an appeal from that decree.[5] The court of appeals affirmed the circuit court's order. *Trice v. Trice*, 2021 Ark. App. 153, at 1, 624 S.W.3d 306, 309. This court granted Garland Jr.'s petition for review. Thus, we consider the appeal as though it had originally been filed in this court. *Davis Nursing Ass'n v. Neal*, 2019 Ark. 91, at 4, 570 S.W.3d 457, 460.

II. *Adverse-Possession Claim*

Garland Jr. argues that the circuit court clearly erred in quieting title to the property in favor of Ocie and Eoies because they failed to present a prima facie case of adverse possession in light of their cotenancy with numerous known and unknown family members.

---

[5]Essie Trice-Hewett, Earnest J. Trice, and Kalven L. Trice also filed a notice of appeal in the circuit court, but they did not file an appellate brief or join Garland Jr.'s brief.

He advances several reasons for the failure, including that actual notice of an intent to adversely possess the property was not provided to all cotenants until 2018.

The standards governing appellate review of a case that traditionally sounded in equity are well established. *Thompson v. Fischer*, 364 Ark. 380, 382, 220 S.W.3d 622, 624 (2005). Although this court reviews equity cases de novo on the record, we do not reverse unless we determine that the circuit court's findings of fact were clearly erroneous. *Id.*, 220 S.W.3d at 624. A finding is clearly erroneous when, even though there is evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Id.*, 220 S.W.3d at 624.

The establishment of title to real property through adverse possession is governed by both statutes and case law. *Thompson*, 364 Ark. at 383, 220 S.W.3d at 624. Arkansas Code Annotated § 18-11-106 (Repl. 2015) states, in pertinent part:

> (a) To establish adverse possession of real property, the person and those under whom the person claims, must have actual or constructive possession of the real property being claimed and have . . .:
>
> (1)(A) Held color of title to the real property for a period of at least seven (7) years, and during that time paid ad valorem taxes on the real property.
>
> . . . .
>
> (c) The requirements of this section are in addition to all other requirements for establishing adverse possession.
>
> (d)(1) This section shall not repeal any requirement under existing case law for establishing adverse possession but shall be supplemental to existing case law.

Title to land by adverse possession does not arise as a right to the one in possession; it arises as a result of statutory limitations on the rights of entry by the one out of possession. *Utley v. Ruff*, 255 Ark. 824, 826, 502 S.W.2d 629, 631 (1973). Possession alone does not ripen into ownership, but the possession must be adverse to the true owner or record title holder before his or her title is in any way affected by the possession. *Id.*, 502 S.W.2d at 631. In order for a claimant to establish ownership to property by adverse possession, that party has the burden of proof to show, by a preponderance of the evidence, possession for seven years. *Thompson*, 364 Ark. at 384, 220 S.W.3d at 625. In order to establish adverse possession, the possession must be actual, open, continuous, hostile, and exclusive and be accompanied by an intent to hold adversely and in derogation of—and not in conformity with—the right of the true owner. *Bonds v. Carter*, 348 Ark. 591, 599–600, 75 S.W.3d 192, 198 (2002). Because possession by a cotenant is not ordinarily adverse to other cotenants, each having equal right to possession, a cotenant must give actual notice to other cotenants that his possession is adverse to their interests or commit sufficient acts of hostility so that their knowledge of his adverse claim may be presumed. *Hirsch v. Patterson*, 269 Ark. 532, 534, 601 S.W.2d 879, 880 (1980). The statutory period of time for an adverse-possession claim does not begin to run until such knowledge has been brought home to the other cotenants. *Id.*, 601 S.W.2d at 880. When a cotenancy involves a family relation, stronger evidence of adverse possession is required than in the case where no such relation exists. *Ueltzen v. Roe*, 242 Ark. 17, 21, 411 S.W.2d 894, 896 (1967). We have stated that the dispossession of a cotenant is a question of fact, and we will not reverse that determination

7

absent a showing that it was clearly erroneous. *Graham v. Inlow*, 302 Ark. 414, 419, 790 S.W.2d 428, 431 (1990).

In the present case, on the issue of notice, the circuit court ruled:

The Petitioners and Third-Party Defendants were given notice of Respondents' adverse possession claim to the 173.5 acres. The said Petitioners and Third-party Defendants are the heirs of Garland Trice, Ethel Trice, Mattie Mason and [Marguerite] Dorsey. These persons were represented by counsel in the second partition action filed by Garland Trice and others in 1997. This case was decided by Judge Bell in 2003 resulting in an appeal decided in 2005. Trenton Trice and his sons Ocie Trice and Eoies Trice claimed the land by adverse possession which issue was tried by Judge Bell. At that time the Third-Party Defendants and Petitioners, as descendants of Garland Trice, Ethel Green, Mattie Mason and [Marguerite] Dorsey who now claim interest through their ancestors, were all placed on notice that Trenton Trice and his heirs claimed this property by adverse possession.

Here, we agree that the circuit court's findings on notice were clearly erroneous. Again, of R.H. Slaughter's six children, only Essie Trice and Robert Slaughter had children who survived them. Pursuant to the August 7, 1985 consent decree, the property was divided between Essie's heirs and Robert Slaughter's unknown heirs. Since the entry of that decree, Robert Slaughter's unknown heirs have not relinquished their ownership interest in the property. Thus, as cotenants, they were entitled to actual notice of Eoies and Ocie's adverse claim to the property. *See Hirsch*, 269 Ark. at 534, 601 S.W.2d at 880.

In determining that Eoies and Ocie had met the actual-notice requirement, the circuit court specifically found, "At that time the Third-Party Defendants and Petitioners, as descendants of Garland Trice, Ethel Green, Mattie Mason and [Marguerite] Dorsey who now claim interest through their ancestors, were all placed on notice that Trenton Trice and his

heirs claimed this property by adverse possession." This finding was erroneous. Although Garland Sr., Ethel, Mattie, and Marguerite were descendants of Essie Trice, Essie and Robert Slaughter were siblings. Thus, Robert Slaughter's unknown heirs are not Essie Trice's descendants.

We disagree with the circuit court that the 1997 case or the 2005 court of appeals opinion would have put Robert Slaughter's unknown heirs on notice that Trenton and his heirs claimed the property through adverse possession. Ocie and Eoies have not introduced evidence that Robert Slaughter's unknown heirs actually participated in the 1997 case or that a warning order had issued in that case.[6]

Likewise, the 2005 court of appeals opinion was insufficient to provide Robert Slaughter's unknown heirs actual notice of Ocie and Eoies's claim to the property. In contrast to the 2018 warning order and the 2018 notice of quiet-title action, both of which were required to, and did, contain a description of the property, *see* Ark. R. Civ. P. 4(f) (2018) (warning order); Ark. Code Ann. § 18-60-503(a)(2) (Repl. 2015) (notice-of-quiet-title action), the 2005 court of appeals opinion contained no legal description of the property.[7] Moreover,

---

[6]By contrast, Garland Sr. and his siblings, Ethel, Mattie, and Marguerite, initiated the 1997 case by filing the partition petition in that case. *Trice*, 91 Ark. App. at 312, 210 S.W.3d at 149. Thus, any heirs of Garland Sr., Ethel, Mattie, and Marguerite, as their successors in interest, had received actual notice of Ocie and Eoies's adverse claim. *See, e.g.*, *Derryberry v. Sims*, 267 Ark. 846, 847–48, 591 S.W.2d 662, 662–63 (Ark. App. 1979) (filing of complaint to quiet title conveyed actual notice of petitioner's adverse-possession claim to cotenants where the cotenants filed a motion in that same case to make the complaint more definite and certain).

[7]The 2018 warning order and the notice of quiet-title action filed in this case also

the style of that case, *Garland Trice, et al. v. Ocie Trice, et al.*, 91 Ark. App. 309, 210 S.W.3d 147 (2005), did not reference R.H. Slaughter, Robert Slaughter, or Robert Slaughter's unknown heirs. Those unknown heirs are not expected to check constantly for court records that could have affected their cotenancy. *See, e.g., Tennison v. Carroll*, 219 Ark. 658, 663–64, 243 S.W.2d 944, 947 (1951). Thus, we hold that the circuit court clearly erred in finding that Robert Slaughter's unknown heirs were placed on notice that Trenton Trice and his heirs claimed this property by adverse possession. Accordingly, we reverse and dismiss on this basis, and we need not address Garland Jr.'s additional arguments for reversal.

Reversed and dismissed; court of appeals opinion vacated.

WOMACK, J., dissents.

**SHAWN A. WOMACK, Justice, dissenting.** The majority correctly concludes that possession by a cotenant is not ordinarily adverse to other cotenants. Consequently, a cotenant must either give actual notice to other cotenants that his possession is adverse to their interests or commit sufficient acts of hostility so that their knowledge of his adverse claim is presumed. *Phillips v. Carter*, 222 Ark. 724, 727, 263 S.W.2d 80, 81–82 (1953). However, I disagree with the majority's conclusion that the 2005 court of appeals opinion did not provide sufficient notice to the unknown heirs.

---

were insufficient to provide actual notice for purposes of the present quiet-title action because the statutory period of time for an adverse-possession claim does not begin to run until such knowledge has been brought home to the other cotenants. *See Hirsch*, 269 Ark. at 534, 601 S.W.2d at 880. That warning order and notice were published less than a year before trial.

10

Both the circuit court and court of appeals held that the filing of a quiet title action and its accompanying published, appellate opinion provided actual notice, finding "no more unequivocal way of conveying notice." *Trice v. Trice*, 2021 Ark. App. 153, at 11–12, 624 S.W.3d 306, 313–14. This court has held that statements by several cotenants to another cotenant that they felt he no longer had an interest in the property gave actual notice of hostility. *Hirsch v. Patterson*, 269 Ark. 532, 536, 601 S.W.2d 879, 881 (1980). Common sense suggests that the notice associated with a lawsuit against one's interest in land provides notice of hostility that is equal or superior to mere statements.

This court has held that "indirect notice, such as notice by publication, is sufficient in matters affecting real estate." *Bullock's Kentucky Fried Chicken, Inc. v. City of Bryant*, 2019 Ark. 249, at 14, 582 S.W.3d 8, 17. Whether that notice is in a local newspaper or an appellate reporter, the notice is published under an ordinary understanding of the word. *Webster's Third New International Dictionary* 1837 (1976) (defining "publish" as "to declare publicly"). A published court of appeals decision—discoverable on the internet or in a copy of the *Arkansas Appellate Reports* or the *Southwestern Reporter*—arguably provides greater notice than notice by publication in a local newspaper, presumably hundreds of miles away from where the unknown heirs may live. At minimum, any local law library will house a copy of volume 210 of the *Southwestern Reporter, Third Series*, while few if any will have a copy of a local Arkansas newspaper. Accordingly, I believe that the 2005 opinion provided sufficient notice to the unknown heirs, under both our precedent and a recognition of reality.

Moreover, the majority's discussion of both warning orders and the lack of a legal description in the 2005 opinion is irrelevant. Although Eoies and Ocie filed a warning order in 2018, a warning order is not required to provide actual notice when adversely possessing property against a cotenant. *See* Ark. R. Civ. P. 4(g)(3). As discussed, sufficient acts of hostility will provide actual notice to cotenants of another cotenant's adverse intentions. *Phillips*, 222 Ark. at 727, 263 S.W.2d at 81–82. Any implication that a warning order is necessary to provide actual notice to the unknown heirs is not supported by our precedents, the rules of civil procedure, or the Arkansas Code. Similarly, nothing requires a cotenant to receive an accompanying legal description with his notice of another cotenant's hostile intentions. If that was required, the adverse possession claim in *Hirsch* would have failed. *See Hirsch*, 269 Ark. at 536, 601 S.W.2d at 881.

Because the unknown heirs of Robert Trice were third-party defendants in both the 1997 litigation and the 2005 court of appeals decision, I believe that neither the circuit court nor the court of appeals clearly erred when it determined that the unknown heirs had actual notice.

I respectfully dissent.

*Leigh Law, PLLC*, by: *Danielle Hasty*; and *Walas Law Firm, PLLC*, by: *Breean Walas*, for appellant.

*John D. Bridgforth, P.A.*, by: *John D. Bridgforth*, for appellees.